MINNIE ZUBE v. JOSEPH F. WEBER ET AL.

*Trespass—Drains and sewers—Municipal ordinance—Evidence—Use of map before jury.*

1. A city charter gave to the board of public works the supervision of the constru tion, alteration, and repairing of the public sewers, and forbade any person making any connection therewith without the consent of said bo'' d; and it was further provided by ordinance that no such connection should be made except on previous application in writing to, and permission therefor granted by, the common council of the city.

   *Held,* that the ordinance did not divest the board of public works of any of its statutory authority, but determines the circumstances under which the council will permit the work to be done, after which the board controls the time and manner of doing it.

2. In such a case a property-owner, without obtaining consent of the council, attempted to connect his premises with a sewer in a public alley on which his land abutted, which sewer was laid in the half of the alley adjoining the opposite land-owner, who forbade the making of such connection, and who, upon attempting to prevent it, was removed by members of the police force, acting at the request and direction of the city authorities.

   *Held,* that they were trespassers, and, instead of preventing a breach of the peace, themselves committed the offense.

3. A receipt or permit given by the board of public works of a city, authorizing a land-owner to make connection with a public sewer, if competent evidence, must speak for itself, and a witness cannot testify to its contents.

4. Witnesses should state *facts*, and not assume the province of the jury by drawing conclusions therefrom.
5. Testimony that a map has been adopted by a city council does not prove it to be correct.
6. A map of the premises where an alleged assault and battery occurred cannot be used before the jury without proof of its correctness, it not having been offered in evidence.[1]
7. Where on the trial of an action for an alleged assault the evidence tends to show that *two* of the defendants were acting at the request of their co-defendant, who was not present, he should not be discharged on motion at the close of the case.

Error to Wayne. (Jennison, J.) Argued June 16, 1887. Decided October 6, 1887.

Case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*James H. Pound,* for appellant.

*Moore & Canfield,* for defendants Myler and Callon.

*Henry Plass,* for defendant Weber.

SHERWOOD, J. This is an action for assault and battery and false imprisonment.

The declaration alleges that the plaintiff was assaulted and beaten in a public alley in the city of Detroit, and that she was then and there arrested and imprisoned without any reasonable or probable cause or excuse by the defendants; that she was greatly exposed and wantonly humilated, and subjected to public disgrace; that she was injured in her credit, and suffered great pain and anguish for a long time; and therefore now seeks in this suit to recover her damages.

The defendants Myler and Callon pleaded the general issue, with notice that they would show on the trial that they were public officers and members of the metropolitan police of Detroit, and that whatever was done by them in the premises they did as such police officers and conservators of the peace,

---

[1] See *Battishill v. Humphreys,* 64 Mich. 494 (head-note 1 *c*).

at the request and under the direction of the city authorities, in the discharge of their legal duty.

The cause was commenced in justice's court, and the damages laid in the declaration are those limited to the jurisdiction of that court, viz., $100.

On the trial at the circuit, under the proceedings had, and charge and direction of the circuit judge, the defendants all had judgment, and the plaintiff brings error.

All the testimony and proceedings had on the trial at the circuit are contained in the record and bill of exceptions, from which it appears that the plaintiff and her husband own a lot on the west side of Twenty-fifth street; that a sewer, several years ago, had been constructed in an alley at the rear of and on the plaintiff's lot by the city; that the center of the alley had been, prior to June, 1885, the westerly line of the city of Detroit at that point, and at that time, when lands lying west of the plaintiff's lot were annexed to Detroit, they embraced Twenty-sixth street, and the defendant Weber was the owner of the block lying on the opposite side of the alley; that the sewer was built about seven years ago, and at that time defendant Weber would pay nothing towards its construction, and plaintiff's grantors were obliged to pay for the same. The sewer extends between Ash and Myrtle streets. After the annexation, Weber desired to have his premises connected with the sewer.

Connecting sewers with private property is placed under the control of the board of public works of the city, and the plaintiff connected her premises with the sewer soon after it was built.

By Act No. 392, Laws of 1873, § 8, it is provided, among other things, that—

"The board of public works shall supervise * * * the construction, altering, and repairing of * * * the sewers and water-courses within said city; * * * the construction of all sewers and drains; and no person shall make any connection therewith without the consent of

said board, and under such general rules and regulations as the board may adopt."

The following is also an ordinance to amend section 5, c. 53, Rev. Ordinances of 1884 of Detroit:

" It is hereby ordained by the people of the city of Detroit:

" Section 1. That section 5 of chapter 53 of the Revised Ordinances of 1884 be and the same is hereby amended so as to read as follows:

" Sec. 5. No person or persons shall be permitted to connect any drain from his, her, or their premises with any public or lateral sewer or drain now made or constructed, or hereafter to be made or constructed, in said city, nor any private drain whereby his, her, or their premises will be drained, into any public or lateral sewer or drain, except on previous application in writing to, and permission therefor granted by, the common council.

" Persons not embraced in the assessment roll shall be required to pay, on application for permission to connect premises outside of the assessment district, a ratable proportion of the cost of said sewer, to be ascertained by the city engineer, who shall make an assessment on the premises drained therefor, and a refunding roll apportioning the amount which each proprietor is entitled to.

" Sec. 2. This ordinance shall take immediate effect." [1]

From these quotations it appears that the authority to make a connection between private property and the sewer is given by the common council, and the connection and the manner of making the same is to be under the direction of the board of public works; and the permission by the council, it appears by the ordinance, should be in writing. The application for the permission is also required to be in writing; and no person is allowed to make the connection without the consent of the board of public works, after the council has authorized it.

In this case it does not appear that the common council ever gave any consent or permission that the premises of defendant Weber might be connected with said sewer.

The ordinance does not divest the board, or attempt to

---

[1] This amendatory ordinance was approved July 10, 1886.

divest it, of any of its statutory authority in the matters, but only determines the circumstances under which the council will permit the work to be done, and the board of public works then controls the time and manner of doing it.

The position taken by the defendants has made it necessary that we should construe this statute and ordinance, since they claim to base their defense upon the license which these give, when their aid is properly invoked in securing sewer connections; and they insist it was so invoked by the defendant Weber before they attempted to make the sewer connection, or to do what they did, and that defendants Myler and Callon, as police officers, at the time they were requested to go to the aid of those who were doing the work, used only so much force as was actually necessary to remove Mrs. Zube, and the women who with her were in possession of the trench, therefrom. The trench had then been opened by the excavators to the depth of several feet. It was in the removal that the alleged assault and battery was committed upon the plaintiff.

It is not disputed but that the plaintiff and her husband owned the land in which the sewer-pipe was laid, and where the trench was dug, subject only to the right of the public to use the same as an alley. This being the case, neither the city, nor any individual, could use the same for any other purpose without the consent of the owner, or first obtaining legal authority so to do. It appears the plaintiff had forbidden the opening made in the alley, and it does not appear upon this record, by any competent proof, that any of the defendants had any such authority. They were therefore trespassers in attempting to do what they did. Really, the police officers in the part they performed, instead of preventing a breach of the peace, themselves committed the offense. They had no process under which they could justify the assault made upon this German lady.

If what she testifies to is true, it was made without any request to her to do what they wished in the premises. With-

out saying a word to her, they laid violent hands upon her person while she was sitting quietly in the trench, endeavoring thus to protect her rights in the land she owned, with her child in her arms, not yet two years old, and, while in this position, men, under the direction of Myler, seized her by the arm, dragged her out of the trench, her child, falling from her arms, was kicked by one of the men, and she was struck upon the breast, and her arm beaten until it became bloody. Her clothing was torn, and she was made sick in consequence of her rough and violent treatment for several days. It is true, the defendants give a different version of the transaction and what occurred, but do not deny that they took the plaintiff and other women forcibly out of the trench after, as they say, Mrs. Zube was asked several times "to get out of the ditch."

The plaintiff could not understand English, and had to be examined as a witness through the aid of an interpreter.

What has now been said is sufficient to dispose of the case here; but as a new trial must be ordered, and is quite likely to occur, we perhaps ought to say, further, that several objections to the defendants' testimony, when offered, should have been sustained.

John Simonds, who was agent for Mr. Weber, says in his testimony:

"I was there on the night of that day when Capt. Myler was there, and he did not take any proceedings in the matter until he saw the city attorney. I had the receipt with me that day, and Mr. Myler read it, for the permit to go in that sewer. I have not got it with me here."

The plaintiff's counsel then objected to the testimony as incompetent. The objection was overruled, and the witness allowed to continue. This was error. It did not appear the receipt had any bearing upon the issues involved, and, if competent, the paper should have been allowed to speak for itself.

When Capt. Myler was on the stand, the defendants' counsel, after proving by him that he had been on the police force in Detroit for 20 years, and for a long time captain of the force, then asked him if he had ever been arrested. This was objected to as immaterial, and the objection was overruled. The evidence was immaterial, and should not have been admitted.

The court erred in permitting the defendants' witnesses to state, against the objection of counsel for plaintiff, that an excess of force was not used, in answer to the following question:

"State whether or not any more force was used, than was necessary, in taking them out of the ditch."

This was one of the questions to be passed upon by the jury. The witnesses should have been allowed to state the facts, and not to assume the province of the jury.

The court also erred in permitting the witness Campbell to answer the following questions:

"1.   And what instruction did he have then upon that subject?

"2.   Will you state whether or not that has been the practice, since you have been in the office, in regard to making entries and connections with sewers?

"3.   And that would have been paid over upon any claim that was made and established ?"

Campbell was secretary of the board of public works. He was not a lawyer ; and, in answer to the first question, he was allowed to state his views in the case, as he gave them to Myler, as to Mr. Weber's legal right to make the sewer connection.

In answer to the second question, he was allowed to state the practice of the board of public works; the receipt of the assessments for sewer tax like this against Weber; and that he received his, and turned it over into the treasury, and that it was his impression it was there when he talked with Myler.

His answer to the third was—

"The refunding roll is sent to the city controller for distributing the amount to those who are interested in the sewers."

This testimony was all incompetent and immaterial, and this was the objection made to all the questions.

The remark of the court that the case was trivial, and so much time ought not to be spent on it,—or that in substance, —does not appear to have been warranted, if the record states the case correctly. There is nothing appearing to show that any great amount of time was consumed in the trial of the cause, or any desire apparent on either side to procrastinate.

The plaintiff had the right to go to the jury upon her testimony, and upon her theory of the case; and, if they were true, the case should not have been characterized in that way.

It will not do, in this country, to say that the maltreatment of a wife and mother, and her infant child not yet two years old, in the manner claimed and sworn to by this plaintiff, without any legal right or excuse, is a trivial matter, nor that the suit brought for redress of such grievance is a trivial case, when, so far as the record and testimony show, the mother was doing nothing more than asserting her just rights; and such characterization of her efforts was undoubtedly prejudicial to the plaintiff's right.

The court also erred in stating that he should charge the jury that—

"The board of public works had the power to grant the permit [to make the sewer connection]; and the only question is whether the officers used more force than was necessary."

A map of the premises where the alleged assault and battery occurred, and surrounding property, was used before the jury by counsel for the defendants in summing up the case, without any proof having first been made of its correctness, and it was not offered in evidence. This should not have been allowed. The testimony that it had been adopted by the city council was not proof that the map was correct.

The following requests of counsel for plaintiff, under the circumstances of this case, should have been given to the jury in the charge of the court:

" 3. The defendants have not shown any legal justification in this case for their acts, and the plaintiff is entitled to recover for her injuries received at their hands."

" 4. The police have no more right than any other citizen to lay hands upon a citizen, where no felony is claimed to have been committed, nor no breach of the peace takes place in their sight; and, neither being claimed to have been committed in this case, plaintiff is entitled to recover, whether the plaintiff's or the defendants' evidence be taken to be true."

" 10. The jury are the sole judges of the facts in this case, and they are to determine this case upon their understanding of the facts introduced in evidence solely, without regard to any other person's opinion thereon, no matter whoever they may be."

" 11. If the jury find that the plaintiff sat in the alley quietly, and committed no breach of the peace, and defendants had no warrant for the plaintiff, then the defendants, if acting in concert, are liable to plaintiff ; and, in any event, such of the defendants are who assisted in the beating of the plaintiff, if the jury find that she was beaten and her clothing torn."

Under the testimony offered, I do not think the defendant Weber should have been discharged on motion at the close of the testimony, as was done in this case. There are facts in the case tending to show that the persons engaged in what was done at the time the acts complained of occurred, were acting at his request, even though he was not present and directing. I think the facts in his case should have been submitted to the jury.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.