ALASKA FISHERMEN'S PACKING CO. v. CHIN QUONG.

(Circuit Court of Appeals, Ninth Circuit. February 3, 1913.)

No. 2,173.

1. TRIAL (§ 419*)—MOTION FOR NONSUIT—DENIAL—WAIVER.

Error in the denial of a nonsuit at the close of plaintiff's testimony is waived by defendant's introduction of testimony on its own behalf, without moving at the close of all the testimony for the direction of a verdict.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 982; Dec. Dig. § 419.*]

2. CONTRACTS (§ 202*)—CONSTRUCTION—PERFORMANCE—"FURNISH."

A contract by which plaintiff agreed to operate defendant's salmon cannery required plaintiff to provide a sufficient force to pack 2,700 cases per day, and bound him to "receive" the fish on the wharf at N., to clean and prepare them in the fishhouse for canning, and transport them to the cannery. Held, that plaintiff's obligation to pack 2,700 cases per day depended on defendant's undertaking to furnish the fish, and that the word "furnish" was used in the sense of "deliver," so that plaintiff was only required to pack such fish as was actually delivered by defendant at the wharf where plaintiff was bound to receive them.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 918–928; Dec. Dig. § 202.*

For other definitions, see Words and Phrases, vol. 4, pp. 3010–3013.]

3. CONTRACTS (§ 202*)—PERFORMANCE—LOSS.

Where a contract for the operation of defendant's cannery only required plaintiff to pack such fish as was furnished by defendant on a particular wharf, defendant was not liable for loss sustained by the dumping of fish which were never brought to the wharf, in the absence of proof that plaintiff was ever informed that the fish were in the scows or lighters ready for delivery, or was given an opportunity to count and inspect them.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 918–928; Dec. Dig. § 202.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. CONTRACTS (§ 353*)—PERFORMANCE—INSTRUCTIONS.

In an action on a contract for the operation of defendant's cannery, the court charged that it was claimed by defendant that by reason of insufficient and careless work 2,045 cases of salmon were totally spoiled, that if the jury found that any number of cases were so spoiled solely by reason of plaintiff's neglect, or want of diligence, and without defendant's fault, then defendant would be entitled under its counterclaim to damages suffered, etc. It then charged that the jury was entitled to consider evidence that in the canning industry a given number of cans or cases usually spoiled for one reason or another, and determine whether the fish lost was more than the usual loss in similar operations, and, if not, plaintiff had performed his contract with due diligence. *Held*, that such latter instruction had no reference to the measure of damages which defendant might recover for spoiled cans, but was proper as referring solely to the question whether plaintiff had substantially performed his contract to entitle him to recover thereon.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1829–1844; Dec. Dig. § 353.*]

5. CONTRACTS (§ 322*)—PERFORMANCE—EVIDENCE—MATERIALITY—SALES BY DEFENDANT.

In an action for services performed by plaintiff in carrying out a contract to operate defendant's salmon cannery for the season of 1910, defendant having pleaded breach of contract by plaintiff in not having sufficient help to take care of the work required, and that the same was improperly done, defendant's books of account, showing sales of salmon for that season, were admissible to show performance by plaintiff, that the salmon was packed in accordance with the contract, and that defendant had accepted plaintiff's work, and sold the product thereof.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1306, 1307, 1339, 1347, 1348, 1465, 1492, 1534–1542, 1754, 1768, 1772, 1801, 1802, 1804–1808, 1815, 1816; Dec. Dig. § 322.*]

6. APPEAL AND ERROR (§ 1053*)—RECEPTION OF EVIDENCE—SUBSEQUENT EXCLUSION—CURING ERROR.

Where, in an action on a contract to operate defendant's cannery, plaintiff introduced certain evidence of inadequacy of the canning implements and machinery which was not within the issues, and defendant offered testimony that plaintiff's failure to operate the cannery to the contract capacity resulted from insufficient skill in operating the machines, the court's subsequent striking of an unresponsive answer that the contract capacity was beyond the capacity of defendant's soldering machines cured the error involved in admitting it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4178–4184; Dec. Dig. § 1053.*]

7. APPEAL AND ERROR (§ 1056*)—PREJUDICE—RULINGS ON EVIDENCE.

Where, in an action on a contract to operate defendant's cannery, defendant filed a counterclaim for plaintiff's alleged breach of the contract, but no damages were awarded thereon, defendant was not prejudiced by the sustaining of an objection to a question by which it was sought to prove the market price of Alaska red salmon in the year in question to show the extent of defendant's damage through the loss of salmon spoiled in packing by plaintiff.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4187–4193; Dec. Dig. § 1056.*]

In Error to the District Court of the United States for the Second Division of the Northern District of California; Wm. C. Van Fleet, Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Chin Quong against the Alaska Fishermen's Packing Company. Judgment for plaintiff, and defendant brings error. Affirmed.

The parties will be designated plaintiff and defendant as they were in the court below. The plaintiff brought an action upon a contract which it had with the defendant to recover $20,240.10. There were three counts in the complaint. The second was for the recovery of $1,671.40 on account of work done and moneys paid and expended for the defendant at its request. The defendant in its answer admitted that sum to be due the plaintiff. The first and third counts were to recover the sum of $18,568.70, the first count alleging that it was due for breach of contract, and the third count that it was due for labor and services performed by the plaintiff for the defendant at its request in executing and carrying out the contract. The defendant for a counterclaim alleged that between July 2 and July 13, 1910, it delivered at the cannery sufficient fish to have packed each day 2,700 cases in accordance with the contract; that the plaintiff failed to pack said quantity, and by reason thereof the defendant was compelled to and did dump and destroy 31,698 salmon which the defendant had caught and delivered at the cannery, and which the plaintiff was required under the terms of the contract to pack, and that said salmon were worth the sum of $1,911.39, and that, by reason of the plaintiff's inability to handle the quantity of fish supplied by defendant, the defendant was compelled to limit its fishermen to a number of fish per day less than they could and would have caught, and defendant by reason thereof lost 36,600 salmon, which would have been caught and supplied to the plaintiff for the purpose of canning said 2,700 cases of salmon per day, and by reason of the failure of the plaintiff to perform its contract in packing that number of cases the defendant was damaged in the sum of $2,206.98, which it was compelled to pay the fishermen for said 36,600 salmon which they would have caught had they not been put upon a limit. By the terms of the contract the plaintiff undertook to furnish all the skilled and unskilled labor required at the cannery of the defendant at Nushagak, Alaska, for the canning of salmon during the season of 1910, and for that purpose to place aboard the defendant's vessel at San Francisco on or about April 12, 1910, a sufficient force of competent men, not less than 140, to prepare and put up every working day during the term of the contract all the fish that could reasonably be expected to be had at the cannery, "say 2,700 cases or more, if possible." The plaintiff agreed to receive the fish on the wharf at Nushagak, to clean and prepare them in the fishhouse for canning, and to transport them to the cannery, to make all cans, etc., and to salt, fill, solder, label, and put in cases nailed up the entire pack of the season. The contract contained the following provisions: "The party of the second part guarantees the pack at this cannery to reach sixty-six (66,000) cases, and hereby agrees, if the amount should be less than that, to pay the party of the first part, the same as if the pack had been that amount. If over sixty-six (66,000) cases each case to be paid for at the price agreed upon in this contract. * * * And it is expressly understood that the party of the first part is to put up not less than twenty-seven hundred (2,700) cases of fish per working day, provided they are furnished with the necessary fish for that purpose, by the party of the second part. In default thereof they agree to forfeit to the party of the second part one ($1.00) per case." In the first count of the complaint it was alleged that the plaintiff duly performed all the covenants, stipulations, and conditions of said agreement on his part to be performed, that the defendant had paid him $14,000 as advance payments under the contract, and that there became due and payable under the terms of the contract the sum of $36,000, and other items were set forth to show that the balance remaining due the plaintiff under the contract was $18,568.70. In the third count the plaintiff alleged that the defendant was indebted to him in the sum of $18,568.70 on account of work, labor, and services done and performed by him at its request in fulfilling and performing the same agreements and stipulations as are contained in the contract. Upon the trial the jury returned a verdict in favor of the plaintiff for the sum of $20,192.10.

G. C. Fulton, of Astoria, Or., and Chickering & Gregory, of San Francisco, Cal., for plaintiff in error.

John T. Thornton, of San Francisco, Cal., for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). [1] Error is assigned to the denial of the defendant's motion for a nonsuit as to the first cause of action, made at the close of the plaintiff's testimony. The assignment of error is of no avail to the defendant in this court for the reason that, after the motion for a nonsuit was overruled, the defendant proceeded to take testimony upon the issues involved in said cause of action, including evidence tending to show that the plaintiff had not performed the contract, and did not, at the close of all the testimony, request the court to instruct the jury to return a verdict in its favor. Columbia & Puget Sound Railroad Co. v. Hawthorne, 144 U. S. 202, 12 Sup. Ct. 591, 36 L. Ed. 405; Runkle v. Burnham, 153 U. S. 216, 14 Sup. Ct. 837, 38 L. Ed. 694; Hansen v. Boyd, 161 U. S. 397, 16 Sup. Ct. 571, 40 L. Ed. 746; Walton v. Wild Goose Mining & Trading Co., 123 Fed. 209, 60 C. C. A. 155. The case is unlike Lydia Cotton Mills v. Prairie Cotton Co., 156 Fed. 225, 84 C. C. A. 129, in which the court held that error might be assigned to the overruling of a motion for a nonsuit made at the close of plaintiff's evidence on the ground that there was no issue of fact for submission to the jury, notwithstanding that the defendant thereafter took testimony, and did not renew the motion at the conclusion of all the evidence. In that case the motion was based solely upon a proposition of law and no issue or question of fact was involved, and the defendant's evidence had and could have no bearing upon it.

[2] Error is assigned to the construction given by the court below to the word "furnish" as used in the contract. The court in charging the jury on the contested issue, raised upon the counterclaim pleaded by the defendant, as to whether a sufficient number of fish had been supplied by the defendant to the plaintiff to enable the latter to pack the stipulated number of 2,700 cases per day, instructed them to view all of the evidence and determine therefrom whether or not it had been shown on the part of the defendant in its counterclaim that this contract had not been carried out, if it did furnish sufficient fish to enable the plaintiff to pack the number of cases required by the contract, etc., and in that connection instructed them that fish were only furnished under the contract by the defendant to the plaintiff when they were delivered in the manner and at the place designated in the contract. The contract provided:

"The party of the first part agrees to receive the fish on the wharf at Nushagak, to clean and prepare them in the fish-house for canning (it being understood that the scales are to be removed from the fish) and transport them to the cannery."

We think the court below committed no error in construing the contract to mean that the plaintiff's stipulation to pack 2,700 cases per diem depended upon the defendant's undertaking to furnish the fish,

and to furnish them at the place where the plaintiff was under obligation to receive them, which was on the wharf. The defendant in urging its counterclaim relies upon the fact that 31,698 salmon were thrown overboard near the wharf, and that 36,600 more fish might have been caught if the plaintiff had been able to pack them. But there was no allegation in the counterclaim of any fact or circumstance to excuse the delivery of fish at the wharf under the terms of the contract.

[3] The evidence is that the 31,698 fish were never brought to the wharf but were dumped from scows or lighters moored near the cannery. The defendant contends that its readiness and ability to furnish the fish constituted a compliance with its obligation as expressed in the contract, and that it was not required actually to deliver them on the wharf in order to support its counterclaim, and that the word "furnish" does not mean deliver. There can be no question that the word "furnish" as used in contracts often does not mean deliver. But its meaning must be determined in each case by its relation to other terms and provisions of the contract. In this case its meaning is determined by the stipulation of the plaintiff to "receive the fish on the wharf."

The defendant urges that, notwithstanding its failure to plead facts which would constitute an excuse for failure to deliver the salmon, proof of these facts was received in evidence without objection, and that thereby the variance between pleading and proof was waived. But the facts shown are not in themselves sufficient to constitute an excuse. They are that the defendant destroyed fish and limited its catch of fish for the reason that the plaintiff's force was inadequate to take care of them, and to pack the stipulated 2,700 cases. But to charge the plaintiff with liability for the loss or destruction of fish it was necessary to bring the facts to his attention. In the bill of exceptions which is before us there is nowhere any intimation that the plaintiff or his foreman or any of his workmen were ever informed that the fish were in the scows or lighters ready for delivery, or that the plaintiff or his foremen was given an opportunity to count or inspect them. Kep Yung, for the plaintiff, testified:

"All the salmon they furnished us to pack was canned. There were some fish that were no good, and they were thrown away."

Whatever may have been the legal liabilities of the parties, the real question here is whether the court erred in giving the instruction which was excepted to. That instruction submitted to the jury the question whether the defendant had shown that the contract had not been carried out, whether the defendant did furnish sufficient fish to enable the plaintiff to pack 2,700 cases per day, and informed the jury that fish were only furnished under the contract when they were delivered in the manner and at the place designated therein. We find no error in that instruction.

[4] Error is assigned to the instruction of the court to the jury that they might take into consideration the usual loss resulting from spoiled cans that occurs in operations of the kind in question. The court, in a lengthy instruction on that subject, among other things, said, referring to the evidence that in that class of work a given num-

ber of cans or cases will usually be spoiled or destroyed through one cause or another:

"You have a right to take that evidence into consideration and determine whether the loss of fish which has been testified to here—that is, I mean the loss in spoiled cans—was any more than the usual loss that occurs in operations of that kind. If there were not, then the plaintiff has performed the contract as it is contemplated by the law he should have performed it, with due diligence."

It is urged that the instruction so given was erroneous because it conflicts with the following provision of the contract:

"All swelled cans in excess of four (4) per hundred (100), all light cans, all cans collapsed, burst or deficient in seams (where any of said faults or defects are the result of want of skill of the party of the first part) are to be paid for by the said party of the first part at the rate of six (6) cents per can."

No such objection was made in the court below. Counsel for defendant said:

"If your honor please, at this time we would like to take an exception to that portion of the instructions which says that débris cans which have been referred to could be considered a portion of the 2,045 cases.

"Court: What is that?

"Counsel: That the general loss of a cannery can be considered a part of the 2,045 cases.

"Court: That is for the jury to determine, whether they were a part of such loss or not."

Elsewhere in the charge the court said:

"It is further claimed by defendant in its counterclaim that by reason of the inefficient and careless work of the plaintiff's men 2,045 cases of salmon were totally spoiled, and left at the cannery and could not be marketed. * * * Should you find that this or any number of cases of salmon were so spoiled and rendered valueless solely by reason of the neglect, unskillfulness, or want of diligence of plaintiff's men, and without the fault of defendant, then defendant would be entitled under its counterclaim to the damages suffered thereby, and to be compensated for such loss in accordance with the terms of the contract. In that respect the contract provides" (quoting the terms of the contract).

It is clear that in the charge which is excepted to the court submitted to the jury the question whether or not there were spoiled in performing the contract cans in a quantity greater than is usual in operations of that kind, and that this question was submitted only with reference to its bearing upon the question whether or not the plaintiff had sufficiently performed the contract to entitle him to recover under the first count of the complaint. It had no reference whatever to the measure of damages which the defendant might recover for spoiled cans. There was no error, therefore, in the charge as given.

[5] It is contended that the court erred in permitting the plaintiff to produce in evidence the defendant's books of accounts showing sales of salmon for the season of 1910. The objection made was that the evidence was immaterial. If that was the only objection, the admission of the testimony was not reversible error, since it does not follow that it was injurious to the defendant. But the

evidence may have been admissible as material to show performance by the plaintiff of the contract, or to show that the salmon was packed in accordance therewith, and under the third count of the complaint it may have been material evidence to show that the defendant had accepted the work the plaintiff did in carrying out the contract. The defendant was not bound by the showing of the sales so made. It was competent for it to show, if it could, that the salmon so sold were not the salmon which were packed by the plaintiff under the contract in question.

[6] There was no error in overruling the motion of the defendant to strike out the testimony of Kep Yung concerning the defects of the machinery of the defendant. Kep Yung testified that enough fish were furnished to pack 2,700 cases a day, "but it was beyond the capacity of the soldering machines." A motion was made to strike out the clause of the answer so quoted as not responsive to the question. The motion was denied. Subsequently, however, the court stated that it had become satisfied that under the pleadings the evidence on behalf of plaintiff already introduced tending to show inadequacy or the improper condition of the implements and machinery that were furnished the plaintiff in carrying out the contract was inadmissible, and that the evidence put in by the plaintiff upon that subject should be eliminated. The evidence was stricken out. Counsel urged that, notwithstanding that the evidence was struck out, the prejudicial effect to the defendant of its admission in the first instance was so great as not to be cured by striking it out. There doubtless are cases in which the effect of the erroneous admission of testimony is not cured by subsequently striking it out, cases in which the impression produced by testimony upon the minds of the jury persists notwithstanding the instructions of the court to disregard it. But this does not seem to be such a case. The testimony on the part of plaintiff tending to show that the soldering machines were defective was contradicted by testimony of the defendant tending to show that they were in good condition and sufficient for the purpose of canning 2,700 cases per day, and that the trouble with the plaintiff's operation of the machines was their want of skill in managing and heating the same. In this view of the record, we cannot say that the defendant was prejudiced by the admission of the testimony, and, indeed, we might be justified in holding that the testimony was not impertinent to the issues, and would have been admissible if offered at the proper time in answer to the defendant's counterclaim.

[7] It is contended that the court erred in sustaining an objection to a question asked of a witness by the defendant, the purpose of which was to prove the market price of Alaska red salmon in the year 1910, and to show the extent of the defendant's damage through the loss of salmon spoiled in packing by the plaintiff, and it is argued that, notwithstanding that the measure of such damages was expressed in the contract, the agreement in that respect was not controlling, that, under section 1671 of the California Civil Code, such damages may not be liquidated by agreement of the

parties except in cases where it would be impracticable or extremely difficult to fix the actual damages, and it is said that in the present case there would have been no difficulty in fixing the damages by showing the market price of salmon. The whole contention becomes immaterial in view of the fact that the jury found no damages for the defendant. The error, if error there was, was thereby made immaterial. Cunningham v. Springer, 204 U. S. 647, 27 Sup. Ct. 301, 51 L. Ed. 662, 9 Ann. Cas. 897, and cases there cited.

We find no error. The judgment is affirmed.