[L. A. No. 3878.   Department Two.—January 23, 1917.]

## EDWARD G. EDMUNDS, Respondent, v. ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY et al., Appellants.

EVIDENCE—CARBON COPY OF LETTER FORMING PART OF CORRESPONDENCE.—Where a party introduces in evidence a letter from his adversary, which was apparently in answer to one from himself, it is proper to admit without previous notice and demand for a production of the original, a carbon copy of the letter so answered, upon proof of its being a correct copy.

AGENCY—RATIFICATION OF AGENT'S OPPRESSIVE ACTS—PUNITIVE DAMAGES.—While a principal may ratify and approve the oppressive acts of his agent, and the failure to discharge such agent may be evidence tending to show ratification, still the mere omission to dispense with the services of the offender, standing by itself and unsupported by any other circumstances indicating the employer's approval of his course, is never sufficient to establish ratification. But by continuing the wrongdoer in his service after knowledge or opportunity to learn of the misconduct, and by other acts, the principal may become an abettor of the oppression and may make himself liable in punitive damages.

ID.—ASSAULT BY AGENT—OPPORTUNITY OF REDRESSING WRONG AS CONDITION TO PUNITIVE DAMAGES.—In an action against a principal to recover damages for an assault by his agent, if the plaintiff wishes to charge the principal with vindictive damages, he should inform him of the facts before commencing the action, and should give him an opportunity of redressing the wrong. The mere notification of the principal of the claim of the injured person is not enough. There should be, in addition to this, time and opportunity for investigation.

ID.—EVIDENCE—OPINION AS TO EXTENT OF FORCE USED.—In an action against a railroad company to recover for an alleged assault by its employee in forcibly ejecting the plaintiff from its right of way, a witness may not testify that in his opinion the employee used more force than was necessary.

APPEAL from a judgment of the Superior Court of Kern County, and from an order refusing a new trial.   Paul W. Bennett, Judge.

The facts are stated in the opinion of the court.

U. T. Clotfelter, M. W. Reed, Rollin Laird, and A. H. Van Cott, for Appellants.

R. H. Wilson, M. S. Platz, and E. B. Drake, for Respondent.

MELVIN, J.—The Atchison, Topeka and Santa Fe Railway Company (a corporation) appeals from the judgment and from an order denying its motion for a new trial.

The plaintiff, Edward G. Edmunds, was engaged in the business of selling newspapers in the city of Bakersfield. He had been ordered by John Lambert, a special policeman in the employ of the appellant corporation, not to offer for sale or to sell papers at the station or on the right of way of the company in Bakersfield. The officer, on the theory that Edmunds had violated this order, forcibly ejected him from the right of way. Edmunds brought suit for damages against Lambert and the Atchison, Topeka and Santa Fe Railway Company. Later the complaint was dismissed as to Lambert and the San Joaquin Valley Railway Company, appellant's lessor, was substituted as a party defendant. The case was tried by a jury and a verdict for four thousand dollars as damages was returned against appellant alone, the court giving judgment accordingly.

Appellant insists that the evidence shows without contradiction that no more force than was necessary was used to eject plaintiff from its premises, but we think there was a substantial conflict of testimony regarding the amount of force used. The verdict is also attacked as excessive and several other reasons are urged for reversal, but we need not consider all of these in detail, as we must reverse the judgment and order because of misdirection to the jury.

The court permitted the plaintiff to introduce in evidence, without previous notice to appellant and demand for a production of the original, a carbon copy of a letter written and sent by plaintiff's counsel to one of the counsel for the Santa Fe company. The ruling was based upon the fact that plaintiff also produced a letter written by Mr. Camp, appellant's solicitor, which was apparently an answer to one written by plaintiff's counsel who testified that up to the date of the receipt of Mr. Camp's communication he had written to the company but one letter, of the body of which the offered

carbon was a correct copy. The ruling was proper and is supported by the authority of *Pratt* v. *Phelps,* 23 Cal. App. 755–757, [139 Pac. 906]. The letter from plaintiff's counsel to a representative of the railway company was dated August 12, 1911, and purported to be a description of the attack upon Mr. Edmunds by the special police officer. It gave the date of the occurrence as August 9th. It is not necessary to produce the letter in its entirety. Suffice it to say that it graphically described an attack by a powerful man upon one who was physically his inferior and who was suffering from the results of a railroad accident. There was a denial that at the time of the occurrence Mr. Edmunds was selling papers on the company's property. The letter also contained the following language:

"For these injuries and indignities we expect the company to stand responsible. . . .

"In the utmost good part we are laying this matter before you just as it is. If you think you can defeat us with these facts satisfactorily proven, we cannot agree. Otherwise, we hope to arrive at an adjustment and speedy settlement."

Mr. Camp's reply, which was very brief, was as follows:
"Mr. R. H. Wilson,

"Attorney at Law, Fish Building, Bakersfield, Cal.

"Dear Sir: Yours of the 12th inst. addressed to the legal department, has reached my hands. I am making some investigation in regard to the matter, but as Mr. Lambert, the special officer, is away on a short vacation, I shall hardly be able to get his side of the story before the first of September. I am assured that there is another and very different side to the story and I certainly hope that Mr. Edmunds will not attempt to sell papers on our premises where he has been forbidden to peddle them, and I assure you that all necessary force will be used at any time to prevent the forbidden action.          Yours truly,

"E. W. CAMP, Solicitor."

This correspondence is very important in view of certain instructions given by the court. The jurors were instructed that if Lambert acted with oppression or malice toward plaintiff with the approval or ratification of his employer, the Atchison, Topeka and Santa Fe Railway Company, they might give, in addition to actual damages, an award of smart

money or punitive damages.   They were also instructed as
follows:

"If you believe from the evidence that John Lambert,
while acting as the servant of the defendant Atchison, To-
peka and Santa Fe Railway Company, in the general scope
of his employment, used oppression or malice in the alleged
assault upon plaintiff at the time and place alleged in his
complaint, and that the attention of defendant was called
to such oppressive or malicious assault and that it had the
means of verifying the truth of such charge and thereafter
retained said John Lambert in its employ, then you are in-
structed that said defendant ratified the act of said Lambert
and it is liable to plaintiff in punitive damages by way of
example in addition to any actual damage that you may find
plaintiff has suffered."

This instruction was not justified by the evidence, nor is it
a correct statement of the law.   It is undoubtedly true that
a principal may ratify and approve the oppressive acts of an
agent and that failure to discharge such agent may be evi-
dence tending to show ratification, but the omission to dis-
pense with the services of the offender, standing by itself and
unsupported by any other circumstances indicating the em-
ployer's approval of his course, is never sufficient to estab-
lish ratification.   By continuing the wrongdoer in his service
after knowledge or opportunity to learn of the misconduct
and by other acts, the principal may become an abettor of
the oppression and may make himself liable in punitive
damages.   In this case the evidence shows that upon receipt
of the letter from plaintiff's representative the railroad com-
pany's solicitor promptly promised a thorough investigation
of the matter upon the return of the police officer from his
vacation.   It is not shown that after the offer to treat with
the railroad company for the purpose of reaching an adjust-
ment of Mr. Edmund's claim out of court any other negotia-
tion was had between the parties prior to the commencement
of the action, which, according to counsel for appellant, was
some ten days prior to September 1st, the date mentioned by
Mr. Camp as the probable time of Lambert's return.   The
record does not show definitely the time of the filing of either
complaint, but certain it is that plaintiff did not show an
opportunity on the part of the employer to investigate its
agent's acts and its subsequent conduct by which that corpo-

ration approved his deeds of oppression, if any were committed. No proofs were furnished, so far as the record shows, nor were the names of the many alleged witnesses given to Mr. Camp or to any other representative of the railroad company. Under these circumstances the failure to discharge the special officer was not even an element of proof of an approbation, indorsement, or ratification of his acts. If a plaintiff in a case such as this wishes to charge a principal with vindictive damages, he should inform the principal of the facts before commencing the action and should give him an opportunity of redressing the wrong. The mere notification of the principal of the claim of the injured person is not enough. There should be, in addition to this, time and opportunity for investigation. (*Foley* v. *Martin,* 142 Cal. 256–264, [100 Am. St. Rep. 123, 71 Pac. 165, 75 Pac. 842].) The instruction was obviously very injurious to appellant. The verdict was not segregated into items of punitive and other damages, but in view of the admitted fact that plaintiff was incapacitated for his usual work only a few hours following the alleged brutality of the policeman, there can be small doubt that at least a portion of the verdict of four thousand dollars was intended by the jury as punishment for the wrong which the jurors believed had been inflicted upon plaintiff.

In view of the possibility of another trial, we need only review one other alleged error. One of the witnesses was permitted to testify that in his opinion Mr. Lambert used more force than was necessary. This was error which will doubtless not occur at another trial. One of the issues before the jury was whether or not the officer was using more vigorous measures than were necessary to eject plaintiff from the premises. It was error to permit the witness to submit his opinion on this subject. (*Raynor* v. *Wilmington etc. Ry. Co.,* 129 N. C. 195, [39 S. E. 821]; *Zube* v. *Weber,* 67 Mich. 54, [34 N. W. 264]; *Kendall* v. *Limberg,* 69 Ill. 358.)

The judgment and order are reversed.

Henshaw, J., and Lorigan, J., concurred.