### NOVICK et al. v. GOULDSBERRY.
### No. 11869.

United States Court of Appeals
Ninth Circuit.
March 11, 1949.

Seward R. E. Baumgartner and George B. Grigsby, both of Anchorage, Alaska (E. Coke Hill, of San Francisco, Cal., of counsel), for appellants.

Edward V. Davis, William W. Renfrew and Davis & Renfrew, all of Anchorage, Alaska, for appellee.

Before BONE and ORR, Circuit Judges, and YANKWICH, District Judge.

YANKWICH, District Judge.

On December 20, 1946, Appellee, Anson E. Gouldsberry, plaintiff below, filed an action in the District Court for the Territory of Alaska, Third Division, against four defendants, William H. Novick, Annetta Novick, William Carroll and Lucille Carroll. The Novicks, who are the appellants here, are the owners and operators of a bar at Seward, Alaska, known as "Novick's Cocktail Lounge." William Carroll was the bartender. On July 5, 1946, Gouldsberry, according to his complaint, was assaulted by the Carrolls and Annetta Novick. As a result of his injuries, he was unable to work for about six months, except at odd jobs. He suffered cuts and a broken ankle and

pain and ill-effect from the injuries, and, at the time of trial, his ankle was still giving him trouble. He sought compensatory damages in the sum of $15,000, punitive damages in the sum of $5,000, and special damages, in the form of loss of wages, $2,250, and medical expenses, $87.

A joint answer, filed by all the defendants, admitted Carroll's employment, but denied liability, asserting that the plaintiff provoked the disturbance, and that the three defendants present were compelled to defend themselves. The cause was tried to a jury, which, on March 27, 1947, returned a verdict in favor of the plaintiff, against all the defendants, for $2500 compensatory damages and $1,000 punitive damages. A motion for a new trial was made and denied, but none of the pleadings relating to it appear in the Transcript of Record.

This is an appeal from the judgment entered upon the verdict, which is prosecuted only by appellants William H. Novick and Annetta Novick. 28 U.S.C.A. § 1291.

I

The Facts in Summary

As was to be expected in a case of this character, the participants and the witnesses are not in agreement as to the nature of the brawl which took place in the Cocktail Lounge and of the circumstances which led to it.

The version of the appellee, *which the Jury evidently believed,* may be summarized briefly as follows:

Gouldsberry walked into the bar and ordered beer. Carroll was the bartender in charge. Carroll's wife, who had been but recently divorced from Gouldsberry, was sitting at one end of the bar. Gouldsberry was not expecting any difficulties that evening. For he had taken along his small dog and had left his supper cooking in his home. When he entered the bar, he congratulated Carroll on his marriage, and offered to buy him and Mrs. Carroll drinks. A conversation ensued between Gouldsberry and Mrs. Carroll, during the course of which Mrs. Carroll said that people were "telling lies about her." After a little more talk, Gouldsberry told Mrs. Carroll: "Well, I don't suppose you bought another man a

bathrobe and I had to pay for it." Carroll then struck Gouldsberry in the face with a bottle, knocking him to the floor. Gouldsberry was knocked partially unconscious. A scuffle ensued, with Gouldsberry on the floor. Mrs. Novick had been sitting at the bar. She and Mrs. Carroll and another person, Gouldsberry testified, were "hammering" on him when he was on the floor. He was not certain, however, whether Mrs. Novick struck and beat him. Nor did he know whether Mrs. Carroll took part in the scuffle on the floor. He suffered injuries, cuts on his lip, face and body and a broken ankle. He became quite "bloody." When full consciousness returned, Mrs. Novick had her hands on his shoulders, shoving him towards the door. She told him to "get out and shut up." The Chief of Police put him in jail, handling him roughly during a search of his person. He could not make bail that night because it was too late and everybody was in bed. The jail was unsanitary, without drinking water or blankets. He remained there all night without medical care, cold, wet and bleeding. The next morning, the Carrolls signed a criminal complaint against him. He was released on bond, caught a plane to Anchorage, where he sought to obtain counsel, but did not succeed. The brawl had occurred on Friday. The trial on the criminal complaint took place the following Monday, before the Municipal Magistrate at Seward. Gouldsberry was taken from the hospital where he had gone for treatment, and escorted to the City Hall on crutches. He tried to make a defense, but the Chief of Police would not allow him to do so. He was found guilty and sentenced to 75 days in jail or $150 fine.

After the trial, Novick said: "What's the matter with you, Gouldsberry? Are you crazy? *If I had been there, I would have broke your God damn neck."* Gouldsberry returned to the hospital. It does not appear how long he remained there, but he did not learn of his sentence until after he was discharged from the hospital. He served a portion of it before being released on payment of the fine.

The appeal questions (1) the sufficiency of the evidence to sustain the verdict and

judgment, (2) the correctness of certain of the Court's instructions to the jury, and (3) the refusal of requested instructions.

## II
### The Inquiry Into the Insufficiency of the Evidence

■ At the outset, certain matters should be adverted to which affect the extent of our review of the rulings of the court below. The Federal Rules of Civil Procedure do not apply to the territorial district courts of Alaska. Federal Rules of Civil Procedure, rule 1, 28 U.S.C.A.; see, Mookini v. United States, 1938, 303 U.S. 201, 58 S.Ct. 543, 82 L.Ed. 748. And so, in seeking a solution for the problems of practice and procedure which this appeal presents, we must look to the statutes of the United States or the laws of the Territory of Alaska.

■ What is commonly known as a motion for a directed verdict is denominated by the law of Alaska as a motion for a nonsuit. The statute provides that such motion may be given against the plaintiff "when, upon the trial, the plaintiff fails to prove a cause sufficient to be submitted to the jury." C.L.A.1913, Sec. 1069, C.L.A.1933, Sec. 3668, A.C.L.Ann.1949, Sec. 55-9-11.

■ This section accords with what was the federal rule generally, prior to the adoption of Rule 50, Federal Rules of Civil Procedure. And this Court has held that if such motion is made by a defendant and is overruled, it is waived by the subsequent introduction of evidence by him. Fulkerson v. Chisna Mining & Imp. Co., 9 Cir., 1903, 122 F. 782, 784; Walton v. Wild Goose Mining & Trading Co., 9 Cir., 1903, 123 F. 209, 214; Northwestern Steamship Co. v. Griggs, 9 Cir., 1906, 146 F. 472; and see, Hansen v. Boyd, 1896, 161 U.S. 397, 16 S.Ct. 571, 40 L.Ed. 746; Union Pacific Ry. Co. v. Daniels, 1894, 152 U.S. 684, 14 S.Ct. 756, 38 L.Ed. 597; Runkle v. Burnham, 1894, 153 U.S. 216, 222, 14 S.Ct. 837, 38 L. Ed. 694.

■ In order to avoid this consequence, the defendant, if he intends to challenge the sufficiency of the evidence after an adverse verdict, must renew the motion at the conclusion of all the testimony. Alaska Fishermen's Packing Co. v. Chin Quong, 9 Cir., 1913, 202 F. 707, 710; Courtnay v. King, 9 Cir., 1915, 220 F. 112; Sharples Separator Co. v. Skinner, 9 Cir., 1918, 251 F. 25; Bank of Italy v. F. Romeo & Co., Inc., 9 Cir., 1923, 287 F. 5; United Verde Copper Co. v. Jaber, 9 Cir., 1924, 298 F. 97; Ralston Purina Co. v. Novak, 8 Cir., 1940, 111 F.2d 631.[1] If he does not do so, the sufficiency of the evidence cannot be reviewed as error in "denying the motion for a new trial." Courtnay v. King, supra, 220 F. at page 113. And see, A.C.L.Ann. 1949, Secs. 55-7-131, 132; Copper River & N. W. Ry. Co. v. Reeder, 9 Cir., 1914, 211 F. 280, 286.

■ An examination of both the printed transcript of record and the typewritten transcript in the custody of the Clerk discloses the fact that, while a motion for a directed verdict was made at the conclusion of the plaintiff's case, *the motion was not repeated after the completion of the rebuttal testimony.* To the contrary, these transcripts show that after the rebuttal testimony of the plaintiff's witness, Henry J. Pallage, *both sides rested.* The legend reads: "And, thereupon, both sides having rested, the Court instructed the jury as follows:" This is followed immediately by the instructions of the court to the jury. It is evident, therefore, that, while the appellants' Assignment of Error No. 1 and their brief speak of a motion for a directed ver-

---

[1] Under Rule 51, Federal Rules of Civil Procedure, waiver no longer results from presentation of evidence after denial of a motion for directed verdict. But the motion must still be repeated at the conclusion of all the testimony, if the sufficiency of the evidence, after an adverse verdict, is to be challenged on appeal. Baten v. Kirby Lumber Corporation, 5 Cir., 1939, 103 F.2d 272; Nailling v. United States, 6 Cir., 1941, 124 F.2d 431; Emanuel v. Kansas City Title and Trust Co., 8 Cir., 1942, 127 F.2d 175; Palmer v. Miller, 8 Cir., 1944, 145 F.2d 926, 930; Minnehaha County, S. D. v. Kelley, 8 Cir., 1945, 150 F.2d 356, 359, 360; Itzkall v. Carlson, 2 Cir., 1945, 151 F.2d 647; Frederick v. United States, 9 Cir., 1947, 163 F.2d 536, 539. And see, Montgomery Ward & Co. v. Duncan, 1940, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147.

dict in favor of the defendants "made after both sides had rested," and of an exception to the ruling being made and allowed, in truth, *no such motion was made by the defendant except at the close of plaintiff's testimony*. Under the circumstances, and in the light of the principles of law just discussed, the failure to renew the motion was a waiver and we cannot, on this appeal, review the sufficiency of the evidence.

## III

### The Instructions

We now come to the instructions. Here, again, we are met with the situation that many of the instructions which are now claimed to be erroneous were not excepted to at the trial. Before elaborating on this matter, brief reference should be made to the law of Alaska on this subject.

■ Exceptions to all rulings of the trial court—including "the charge to the jury"—are still the governing principle of procedure in Alaska District Courts. C.L.A.1913, Secs. 1052–1054, C.L.A.1933, Secs. 3633–3635, A.C.L.Ann.1949, Secs. 55-7-121 to 123. Instructions are required to be in writing and to be given before the argument. C.L.A.1913, Sec. 1019, C.L.A.1933, Sec. 3591, A.C.L.Ann.1949, Sec. 55-7-61. The Judge may not "present the facts of the case, but shall inform the jury that they are the exclusive judges of all questions of fact." C.L.A.1913, Sec. 1023, C.L.A.1933, Sec. 3595, A.C.L.Ann.1949, Sec. 55-7-65.

■■ To be reviewable on appeal, exceptions to instructions must be taken in open court before the jury retires and this fact must be shown by the record. Copper River & N. W. Ry. Co. v. Reeder, 9 Cir., 1914, 211 F. 280; Beatson Copper Co. v. Pedrin, 9 Cir., 1914, 217 F. 43; see also, Western Union Telegraph Co. v. Baker, 9 Cir., 1898, 85 F. 690; Arizona & N. M. Railway Co. v. Clark, 9 Cir., 1913, 207 F. 817; Killisnoo Packing Co. v. Scott, 9 Cir., 1926, 14 F.2d 86. And this is not "a mere formal or technical provision. It was in-

troduced and is adhered to for purposes of justice." Phelps v. Mayer, 1854, 15 How. 160, 161, 14 L.Ed. 643. And see, Yenkichi Ito v. United States, 9 Cir., 1933, 64 F.2d 73, 77. For, if opportunity be not given to the trial court to correct error, it is deemed unfair to it and to the litigants that it be asserted later. See, Hazeltine v. Johnson, 9 Cir., 1937, 92 F.2d 866, 867, 868–869; Monaghan v. Hill, 9 Cir., 1944, 140 F.2d 31, 33–34. For the same reason, the objections to instructions "must be sufficiently specific to bring into focus the precise nature of the alleged error." Palmer v. Hoffman, 1943, 318 U.S. 109, 119, 63 S.Ct. 477, 483, 87 L.Ed. 645, 144 A.L.R. 719; see, Monaghan v. Hill, supra; Mill Owners Mutual Fire Insurance Co. v. Kelly, 8 Cir., 1944, 141 F.2d 763, 765–766.[2]

## IV

### The Master's Liability for the Servant's Tort

As such exceptions as were taken to instructions given or refused relate to the responsibility of the master for the tort of his servant, a brief discussion of the subject should precede the analysis of the instructions.

■ It is accepted law that the master may be liable for the willful and malicious acts of a servant within the scope of employment. Thus, a master who authorizes the servant to do acts which may call for the use of force is liable, although the servant exceeded the boundaries of necessity in seeking to achieve the result. Restatement, 1 Agency, Secs. 243, 245; 57 C.J.S., Master and Servant, §§ 572, 575; 35 Am.Jur., Master and Servant, Secs. 552–554, 564; Johnson v. Monson, 1920, 183 Cal. 149, 190 P. 635; Stansell v. Safeway Stores, Inc., 1941, 44 Cal.App.2d 822, 113 P.2d 264; Andrews v. Seidner, 1942, 49 Cal.App.2d 427, 121 P.2d 863.

■ At the same time, the master is not liable if the act of the servant was done with the sole intent of achieving an inde-

---

[2] In this respect, the law has not been changed by the Federal Rules of Civil Procedure. And the decisions under Rule 51 are merely declaratory of what the law was before. Compare Pennsylvania R. Co. v. Minds, 1919, 250 U.S. 368, 375, 39 S.Ct. 531, 63 L.Ed. 1039; Borderland Coal Sales Co. v. Imperial Coal Sales Co., 6 Cir., 1925, 7 F.2d 116; Hall v. Aetna Life Insurance Co., 8 Cir., 1936, 85 F.2d 447, 451; Husky Refining Co. v. Barnes, 9 Cir., 1941, 119 F.2d 715, 134 A.L.R. 1221; Western Fire Ins. Co. of Fort Scott, Kansas, v. Word, 5 Cir., 1942, 131 F.2d 541.

pendent result. When this is the case, the mere fact that the act which caused the harm was done while the servant was acting in the employment and on the employer's premises would not result in liability. 35 Am.Jur., Master and Servant, Sec. 555; Restatement, 1 Agency, Sec. 245, Comment (d), p. 550.

It is intimated in some cases that the act of the servant must be not only within the scope of his employment, but also be committed in the accomplishment of the objects of the employment. See, Barney v. Jewell Tea Co., 1943, 104 Utah 292, 139 P.2d 878. But an analysis of the cases so holding leads to the conclusion that the real basis for decision was that the particular tortious act was clearly unrelated to the accomplishment of any of the objects of the employment.

Illustrative are the cases in which an employee whose duty is was to collect accounts or to call on customers engaged in an altercation with a customer. Barney v. Jewell Tea Co., supra; Moskins Stores, Inc., v. DeHart, 1940, 217 Ind. 622, 29 N.E.2d 948; Kastrup v. Yellow Cab and Baggage Co., 1929, 129 Kan. 398, 282 P. 742. Other cases, usually referred to as supporting this doctrine, are in the same category. Thus, the manager of an industrial concern, in publishing a libel concerning another, Washington Gas Light Co. v. Lansden, 1899, 172 U.S. 534, 19 S.Ct. 296, 43 L.Ed. 543; the porter of a sleeping car attacking a stranger who enters the car asking for the privilege of washing his hands. Williams v. Pullman's Palace Car Co., 1888, 40 La. Ann. 87, 3 So. 631, 8 Am.St.Rep. 512. But see contra, when assault was on passenger. Dillingham v. Anthony, 1889, 73 Tex. 47, 11 S.W. 139, 3 L.R.A. 634, 15 Am.St.Rep. 753. And see also, Gulf, C. & S. F. Ry. Co. v. Kirkbride, 1891, 79 Tex. 457, 15 S.W. 495. It can be seen readily that in all these cases, the act of the servant was totally unrelated to what he was hired to do.

But in the case before us, we are dealing with a bartender, who, by the very nature of his employment, is in charge of the employer's premises and is charged with keeping order about them. An employment of this character is—in the language of the Restatement—"one which is likely to bring the servant into conflict with others." Restatement, 1 Agency, Sec. 245, Comment (a), p. 548. Usually, a bartender is the sole employee on duty at a particular time. If, in exercising his control over the premises, he commits an assault upon another, the employer will be held liable. Stansell v. Safeway Stores, Inc., supra; Andrews v. Seidner, supra. The reason for the rule is well stated in Johnson v. Monson, 1920, 183 Cal. 149, 150, 190 P. 635:

"The question is not one of authority as between the principal and the agent. As between them, *it may well be that the agent's tort against a third person is without authority or is directly contrary to express orders.* But the principal is nevertheless liable for the tort of the agent, provided it be committed by him within the scope of his employment. That the assault in this case was committed within the scope of the bartender's employment is plain. To be sure there is nothing to show that he was authorized or employed to commit assaults, but it is found *that he was authorized to maintain order in the saloon, and the assault was committed in the course of his keeping order.* * * * The situation is not changed by the fact that the court finds the assault to have been malicious and willful." (Emphasis added.)

And see, Sullivan v. People's Ice Corporation, 1928, 92 Cal.App. 740, 268 P. 934; Tighe v. Ad Chong, 1941, 44 Cal.App.2d 164, 168, 112 P.2d 20, 23; Haworth v. Elliott, 1944, 67 Cal.App.2d 77, 153 P.2d 804; Carr v. Wm. C. Crowell Co., 1946, 28 Cal. 2d 652, 654–655, 171 P.2d 5, 6–7; Fields v. Sanders, 1947, 29 Cal.2d 834, 839, 180 P.2d 684, 688–690, 172 A.L.R. 525. Mayo Hotel Co. v. Danciger, 1930, 143 Okl. 196, 288 P. 309; Hunt-Murry Co. v. Gibson, 1932, 157 Okl. 112, 11 P.2d 123.

V

No Error in the Instructions

We discuss the instructions in the light of the principles just enunciated.

The instructions given and refused with which the appellant finds fault are in three groups. The first group consists of instructions relating to the right of self-defense and general damages. We are not in a position to review them because

they were not objected to and no exception taken or allowed at the trial.

The same is true of the defendants' requested instructions, five in number, to which —at the suggestion of the trial judge —a general objection was made. While exception was taken and allowed, the objection did not indicate *specifically* the ground of objection. All that the record indicates is that the court had refused them because they were "embraced in instructions given." [3] An examination of these instructions shows that this evaluation of them by the trial judge was correct. The only one which correctly stated the law—namely, the one to the effect that "the law does not imply any authority from the master to the servant to commit an assault upon a person who is not injuring or threatening to injure the master's property, and who is not interfering with the servant's performance of his duty to the master"—was given elsewhere in the Court's instructions.

In truth, only two specific objections were made. One related to Instruction No. 5. After objection, the Court modified the instruction by giving Instruction 5C, which defined fully the meaning of "scope of employment" in the following manner:

"An act done by an employee is within the scope of his employment and in the course of his employment where such act is or reasonably appears to be necessary, or proper, or suitable, to accomplish the purpose, or the work, or the duties of his employment, although in excess of the powers actually conferred on the employee by the employer. But an act is not necessarily done in course of employment or within scope of employment because done on the employer's premises and by use of the employer's property. An act cannot be said to be within the scope of the employment,

where the employer himself, if present, would have no authority to do the act."

The instruction as amended was not objected to. More, it defined correctly the phrase. See Part IV of this Opinion. See also, 35 Am.Jur., Master and Servant, Secs. 552, 553; 3 C.J.S., Agency, §§ 255, 256; 57 C.J.S., Master and Servant, § 572. Indeed, by calling the attention of the jury to the fact that an act cannot be said to be within the scope of the employment if the employer would not have had authority to do the act, the Court permitted the jury, if they wished, to draw the inferences that the use of force, under the circumstances, by Carroll was a deviation from the master's business, 35 Am.Jur., Master and Servant, Sec. 555, and was not an act for which responsibility should be fastened onto him.

The other objection which, in reality, is the only one which, under the principles alluded to, is properly reviewable (See Part III of this opinion), relates to the modification which the Court inserted into Instruction 6. The instruction originally read:

"An employer is liable for the acts of his employee, even if such acts are wilfull or malicious, where they are done in the course of his employment and within its scope. But where an employee does a wilful and malicious act resulting in injury to another while engaged in working for his employer, but outside of his authority, as when he steps aside from his employment to gratify some animosity, or private grudge, or to accomplish some unlawful purpose of his own, not in any manner connected with his employment or the duties thereof, and completely outside of the scope of his employment, the employer is not liable."

The modification which was inserted at the end of the instruction when it was re-

[3] The colloquy in full was as follows.
"The Court: Very well. Anything else?
"Mr. Baumgartner: That is all.
"The Court: Mr. Davis? By the way, before you get through: I did not give in express language any of the instructions submitted by counsel for the defendants, but if counsel desires, he can now take exception to the refusal of the court to give those instructions as submitted and they may be filed. The record will show now that the instructions submitted by counsel for the defendants are each and all refused except as embraced in instructions as given. Do you wish to take exception to the refusal of the Court to give your instructions? It might not do any harm, and if you should want to appeal——
"Mr. Baumgartner: Yes.
"The Court: It will not hurt your record any.
"Mr. Baumgartner: As long as the exceptions are shown, it is satisfactory."

read was in these words: "unless the jury finds by a preponderance of the evidence that the employer has ratified the acts of his employee as hereinbefore explained." [4]

█ It is argued that this modifying language does not state the law correctly. Concede that if it stood alone, it might be inadequate. Nevertheless, when considered in conjunction with the other instructions, such as Instruction 5, we believe that it advised the jury properly of the circumstances and conditions from which ratification might be inferred. And, while the retention of Carroll in employment and Novick's admission after the trial are mentioned as acts which might be considered, the instructions, as a whole, allowed the jury to determine ratification "from all the evidence." 35 Am.Jur., Master and Servant, Sec. 563; 15 Am.Jur., Damages, Sec. 287; 2 C.J.S., Agency, §§ 34(d), 42, 46, 47(b), 60; 57 C.J.S., Master and Servant, § 558.

Ratification being a matter of intent, the jury were thus left free to deduce it from the entire conduct of the appellants with relation to the assault, after it occurred, including the retention of the bartender, and the approval of his act by their concern in the criminal complaint against Gouldsberry, and in using, after the trial, language indicating sanction of what Carroll did. See, Edmunds v. Atchison T. & S. F. Ry. Co., 1917, 174 Cal. 246, 249, 162 P. 1038; Jameson v. Gavett, 1937, 22 Cal.App.2d 646, 652, 71 P.2d 937; (*Verbal approval of act in conversation with another*); McChristian v. Popkin, 1946, 75 Cal.App.2d 249, 256, 171 P.2d 85. (*Retention in employment*).

As to the appellant Annetta Novick, there is evidence from which the jury could have inferred, as their verdict implies, that she participated in the rumpus and assault. So the problem of ratification arises only as to William H. Novick, because he was not in the bar at the time. But, as the preceding discussion shows, if the duties of the bartender, Carroll, included the keeping of order in the bar, and preventing objectionable behavior, the jury could conclude rightly that the use of force, although excessive, was—under the circumstances—an act for which Novick was jointly liable with his servant, even in the absence of ratification after the act.

█ In reaching this conclusion, we are of the view that the Answer of the defendant, although couched in inexpert language, did not—as argued by the appellee—contain an admission that, in assaulting Gouldsberry, the bartender, Carroll, "acted in the course of employment." [5] The trial court did not so treat the traversals of the Answer. On the contrary, the jury were instructed:

"The defendants in their answer have denied all liability and assert in substance that any damages sustained by plaintiff were the result of his own unprovoked attack upon the defendant William Carroll."

Indeed, the whole charge to the jury is predicated upon the proposition that the question whether Carroll acted in the course of his employment and for his employer's benefit was one of fact for the jury's determination. For this reason, the meaning of "scope of employment," the relative duties and obligations of employer and employee and the right to remove from the bar one whose conduct was unlawful and disorderly, were all covered by instructions. And, as these particular instructions *were not* objected to, it is quite clear that the Court and counsel for both sides tried this case upon the theory that the factual situation presented to the jury was: (1) whether the assault was committed by Carroll in the course of his employment, and

---

4 The period which had ended the sentence with the word "liable" was changed to a comma so as to give continuity to the language.

5 The allegation that Carroll acted in the course of employment was contained in Paragraph 4 of the Complaint. The Answer filed on behalf of all the defendants, which sought to deny this allegation, reads:

"The defendants admit that the defendant William Carroll was in the employ of the defendants William H. Novick and Annetta Novick, in the place of business known as Novick's Cocktail Lounge, at Seward, Alaska; but challenge the implication concealed in said allegation as a device by which plaintiff seeks to hold defendants William H. Novick and Annetta Novick responsible for the personal behavior and conduct of the defendant William Novick."

(2) whether it was justified by the plaintiff's conduct. As the jury's verdict amounts to a finding in favor of the plaintiff on both issues, we should not give to the wording of the answer a narrow, strained or technical construction, which would interpret it as an admission of responsibility by Novick. This would leave provocation as the sole defense, and—in view of the state of the record—would make a good portion of the Court's charge to the jury abstract and confusing. On the contrary, our reading of the answer as a denial of *all* responsibility by Novick conforms to the actualities of the trial.

We conclude, therefore, that there was no error in the instructions given or refused.

We add that a study of the record leads to the conclusion that the appellants had a fair trial before a jury which had before them all the facts upon which they relied as a defense, under instructions which stated the law applicable with fairness and accuracy.

The judgment is affirmed.