## LYDIA COTTON MILLS v. PRAIRIE COTTON CO.

(Circuit Court of Appeals, Fourth Circuit.   September 11, 1907.)

No. 685.

**1. CONTRACTS—CONSTRUCTION—QUESTIONS FOR COURT AND JURY.**

As a general proposition, where the issue is one of fact as to the performance of a contract, it is the province of the jury to pass upon it; but, before the question of compliance or noncompliance arises, there must be a determination of the terms of the contract itself, and where it is in writing showing the whole of the agreement, and its terms are capable of intelligent interpretation, its construction is for the court, and not for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 767.]

**2. SALES—CONSTRUCTION OF CONTRACT.**

In accepting an offer made by plaintiff to furnish a quantity of cotton, defendant wrote as follows: "We understand this cotton is to be full 1⅛ inch staple, same as the staple in the 25 bale sample lot you shipped to us, the grade to be average strict middling, nothing middling. We desire that you be particular in the selection of this cotton as nothing less than full 1⅛ inch, same type as the sample lot will be suitable to us." *Held*, that the contract so made required the cotton sold to be of the same grade as the sample lot of 25 bales, and that, where plaintiff admitted that the cotton shipped thereunder was not of such grade, it could not recover for breach of the contract by defendant in refusing to accept the same.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, § 188.]

**3. WRIT OF ERROR—GROUNDS OF REVIEW—PRESERVATION—MOTION FOR DISMISSAL.**

A defendant may assign for error the overruling of a motion to dismiss, made at the close of plaintiff's evidence, on the ground that there was no issue of fact for submission to the jury, although such motion was not renewed at the conclusion of all the evidence, where the only question in issue under the evidence was the proper construction of a written contract plain in its terms, upon which defendant's evidence had, and could have, no bearing.

McDowell, District Judge, dissenting.

In Error to the Circuit Court of the United States for the District of South Carolina, at Greenville.

W. R. Richey and Wm. G. Sirrine, for plaintiff in error.

Howard B. Carlisle (Carlisle & Carlisle, on the brief), for defendant in error.

Before PRITCHARD, Circuit Judge, and BOYD and McDOWELL, District Judges.

BOYD, District Judge.   The Prairie Cotton Company, the plaintiff below in this case, which will be denominated plaintiff hereafter, is a Mississippi corporation, doing business in that state as a dealer in raw cotton.   The Lydia Cotton Mills, the defendant below, which will hereafter be referred to as the defendant, is a South Carolina corporation, located in that state, carrying on the business of a manufacturer of cotton.   The present suit was brought by the Prairie Cotton Company to recover the sum of $2,500, alleged to be due the plaintiff on a

156 F.—15

contract for the sale and delivery of cotton to defendant. The allegations of plaintiff are, in substance: That on the 11th of October, 1904, the defendant contracted to purchase from plaintiff 200 bales of cotton at the price of 10½ cents per pound, the staple to be 1⅛" long, according to the custom of the cotton trade and of strict middling, nothing below middling; that 50 bales of this cotton were shipped to the defendant and were received and accepted; and that 150 bales were shortly thereafter shipped, which were refused. Thereupon the plaintiff, upon the refusal of the defendant to accept the last shipment of 150 bales, sold the same, and the basis of claim in the suit is the alleged loss by reason of the difference in the price received at the sale and the price agreed upon, together with the costs incident to the sale, et cetera, making in all the sum of $2,500.

The defendant answers and says: That on the 13th of October, 1904, it agreed to take from the plaintiff 200 bales of cotton at the price of 10½ cents per pound, but that the cotton contracted for was to be of the same quality and character as the 25 bales which had been theretofore purchased by the defendant from plaintiff as a sample lot; that the cotton was to be full 1⅛" in length of staple and was to average strict middling, nothing middling; that the 50 bales of the first shipment were sent with bill of lading attached; that defendant, without opportunity to examine the cotton, paid for it and received it from the railroad by which it had been shipped, but, after receiving it, upon examination, it was found that the cotton was of an inferior grade and was not the kind and quality of cotton, especially in length of staple, as the sample which had been furnished by the plaintiff and as had been contracted for by the defendant; that, when the last shipment of 150 bales arrived, defendant declined to accept that, it being of the same length of staple, quality, and grade as the 50 bales theretofore received, and not such cotton as had been contracted for.

The cause was tried by jury and a verdict rendered in favor of the plaintiff for $2,255.66. The court, however, under a practice which prevails in South Carolina, reduced the verdict to $1,127.83, and for the latter amount a judgment was rendered, to which the defendant's counsel duly excepted. At the close of the plaintiff's testimony the defendant's counsel moved the court to nonsuit the plaintiff on the ground that upon the undisputed evidence the plaintiff was not entitled to recover, and especially upon the exhibition of the communications, by letter and telegraph, between the parties, which were the evidences of the contract of purchase, together with the admissions of plaintiff through its agent, examined as a witness. The court refused to grant the motion, to which the defendant duly excepted. There were several exceptions taken by defendant during the trial; one particularly relied upon relating to the question as to whether or not there was a rescission of the contract by the plaintiff. But we do not deem it necessary to consider this nor any other question involved in the case, except that of a proper construction of the contract of purchase. In order to arrive at a full understanding of the contract, we deem it necessary to give the correspondence between the plaintiff and the defendant in relation thereto in full. The transaction was in 1904, and

on the 13th of August of that year the defendant addressed the plaintiff as follows:

"Aug. 13th.

"We will purchase a contract of cotton 1⅛ inch staple running from Sept. 1, 1904, to Sept. 1, 1905, the cotton to be paid for as delivered and to be delivered 150 bales per month f. o. b. our mills. This cotton has to average full 1⅛ inch staple, bender, nothing less than full will be accepted. If you are interested in such a contract we will be pleased to have your quotations and views from time to time until the contract is closed."

### Plaintiff to defendant:

"Aug. 18th.

"Yours 13th to hand. Contents noted. We feel satisfied we can supply your wants as to the character of cotton wanted if we can agree on price. Such cotton as you mention will always command a pretty good premium over short cotton, say 1 to 1-16 staple. Will however, keep your company posted and will do my best to supply your wants."

### Defendant to plaintiff:

"Aug. 17th.

"We desire to have you forward us at once a sample of cotton regardless of the grade that measures full 1⅛ inch staple, the length in staple being the point in question. Please let us have this sample at once with all expense charges to us."

### Prairie Cotton Company wrote on bottom of this:

"Gentlemen: At present there is nothing in this market that will represent the cotton as required by you. In fact there is no cotton here at all. Will send type as soon as it can be obtained."

### Plaintiff to defendant:

"Aug. 31, 1904.

"We sent you a few days ago types showing what we call very full 1⅛ inch cotton, in fact it is 1⅛ inch to 1 3-16 inch. Would be glad to know what you consider it. Kindly let us hear from you."

### Defendant to plaintiff:

"Sept. 1, 1904.

"We are in receipt of your favor of the 28th ult. and are to-day in receipt of the sample of 1⅛ inch staple cotton. We have gone over this cotton carefully and find that it will just about average 1⅛ inch staple. So we will retain this sample as your type of full 1⅛ inch staple cotton for future reference. We are now in the market for 100 bales of this cotton. Let us have your price—landed Clinton, shipment at once. We are also in the market for 150 to 200 bales cotton per month for each month until Sept. 1, 1905. See our letter of August 13th. Will such deliveries be satisfactory with you? Please let us know. We are now ready for your quotations from time to time. We desire the following grade: Strict middling. We purchase by Carolina mill rules."

### Plaintiff to defendant:

"Sept. 3, 1904.

"Yours 2d to hand; contents noted. The sample sent you is very full 1⅛ inch; in fact it is what we sell for ⅛ to 3-16 cotton. We sold this cotton few days ago 12¾ landed; it is worth 11¾ here. We can land you 100 to 200 bales Sept. shipment say for 12¼, probably 12 cts. This character of cotton commands good premium. Can sell you commercial 1⅛ inch or full 1 1-6 to 1⅛ at much less price. Cheap cotton is a thing of the past; the crop is not made. Let us hear from you."

Telegram:
"Sept. 12.

"Let us ship you 25 bales to show you the style and character of the cotton. Eleven quarter. This quarter less than we are getting, but want make start with you as we are satisfied it will lead to business. Answer."

Defendant to plaintiff:
"Sept. 12.

"In reply to your esteemed favor of to-day by wire we replied as enclosed confirmation that we could not use the cotton at 11½ cts. We are looking for 10½¢ cotton to-day and lower during the week. We thank you for your offers and hope to have them continually."

Plaintiff to defendant (telegram):
"Sept. 13.

"We want answer ours last night. Important. You will be pleased with the cotton. Can sell cotton elsewhere if you cannot use."

Defendant to plaintiff (telegram):
"Sept. 13.

"Will take 25 bales 11 cts. if immediate shipment. Answer."

Plaintiff to defendant:
"Sept. 13.

"Telegram received. Will ship 25 bales eleven. This complimentary shipment as we are anxious you try cotton, believing same will result to our mutual benefit; cotton goes forward to-morrow."
"Sept. 13.

"Your telegram accepting 25 bales 1⅛ inch St. middling, to hand. We replied would ship you the cotton more as a compliment than as a monetary basis. Now you gentlemen will find this lot to be full up, in fact the cotton will pull 1⅛ to barely 3-16. We shipped it full in order that you could judge what the cotton is. You must, however, bear in mind that this is green cotton and will not hold up in weight like old cotton. We make a specialty of staple cotton from 1⅛ to 1⅜, and if you can pay the price we can furnish you with some satisfactory business. Now if you can use 1-16 to 1⅛, or what is known as commercial 1⅛, can cut the price, but if you expect to buy good first class stuff you must expect to pay first class prices. Hope this little 25 bales will lead to further business."
"Sept. 14.

"Yours to hand; contents noted. Not disputing your word, but can't buy 1⅛ cotton such as we expect to ship you or call 1⅛, at 10⅞. You might buy what you and your friends call 1⅛, and what suits your trade fully as well as if you were getting the actual 1⅛. We want your business and if the 25 bales now going to you not better and worth more money than the 1⅛ you speak of having bought at 10⅞ we will give you the cotton. We would like to see what you call 1⅛, or what suits your trade for 1⅛; there are a good many different ideas of 1⅛ cotton, but only one of the actual stuff itself. We sold you the 25 bales ½ ct. less than we could have gotten East."

Defendant to plaintiff:
"Sept. 17.

"We forward telegrams as enclosed confirmation to-day. Please rush this 25 bales of cotton with all despatch; we wish for it to reach Clinton next week without fail as we desire to use it along with other cotton we have. We are in receipt of your favor of the 14th instant and note what you have to say and are interested."

Telegram:
"Sept. 17.

"On what day was 25 bales cotton shipped? Answer."

Plaintiff to defendant (telegram):

"Sept. 17.

"Telegrams received. Bill lading and documents taken out fourteenth. Cotton went via Birmingham and Southern Railway."

Defendant to plaintiff:

"Sept. 21.

"Up to this time we have never received the 25 bales of cotton nor B. L. through bank to show shipment. We are unable to trace and we desire that you institute a telegraphic tracer after the lot and see that we get the cotton this week without fail."

Plaintiff to defendant (telegram):

"Sept. 28.

"Offer one hundred strict to good middling full inch eighth eleven quarter, handsome lot, can not do better. Answer early to-morrow."

Defendant to plaintiff:

"Sept. 28.

"Your telegram received offering 100 bales 1⅛ inch strict to good middling full 11¼ cts. We have not yet received the 25 bales of sample cotton shipped by you; we would like to see this cotton before purchasing further. We do not wish to buy at 11¼ cts. as we are confident there will be a great decline in cotton within the next 30 or 40 days."

"Oct. 4.

"We are just to-day in receipt of your sample lot of 25 bales. We supposed that it had been lost in transit. The lot lost 270 lbs.; according to Carolina mill rules you are entitled to 3 lbs loss per bale. You will please remit for amount per bill enclosed less your 3 lbs. Please quote us immediately on receipt of this letter your closest price for 1,800 bales of this cotton, 1⅛ inch staple exactly as your type shown in this 25 bales. Delivery of this 1,800 bales to be made to the mill 200 bales each month until the contract is exhausted. You must give your closest figures to interest us."

Plaintiff to defendant (telegram):

"Oct. 7.

"Offer one hundred or two hundred shipment this month equal the 25 bale lot in staple, eleven cents. It requires time and care to select this character of cotton, which is not very abundant, probably shade this price quarter if answer early to-morrow."

Defendant to plaintiff:

"Oct. 7.

"We are in receipt of your wire offering 100 or 200 bales this month at 11 cts. same as sample lot of 25 bales. We have just purchased some of this cotton at 10¼ cts. and with this before us we consider your price too high. If on receipt of this letter you desire to sell us from 200 to 500 bales of this cotton landed Clinton 10¼ cts. to be delivered 100 bales Oct., 200 Nov. and 200 Dec., please wire us for acceptance."

Plaintiff to defendant (telegrams):

"Oct. 9.

"Would advise you taking on more from same parties at price named, 10¼, can not supply your wants at such price."

"Oct. 10.

"Quote 1⅛ average st. middling, nothing below middling, eleven, if limit impracticable answer the best you can do, will execute order if possible for 100, answer early to-morrow."

Defendant to plaintiff (telegram):

"Oct. 10.

"Offer ten fifty hundred bales like sample lot. Answer."

Plaintiff to defendant (telegrams):

"Oct. 10.

"Telegram received. Your limit impracticable for us. We sold to-day same cotton eleven cents; will sell you hundred this price; we can not do better, market firm, if accepted answer at once."

"Oct. 11.

"Will ship you one hundred or two hundred ten three-quarters; we are giving you full inch eighth cotton; if you care to shade staple a little can do the business for less; we make this offer to keep business going with you; answer early to-morrow sure, cannot do better."

Defendant to plaintiff (telegram):

"Oct. 11.

"Offer ten fifty hundred bales full inch eighth. Answer."

Plaintiff to defendant (telegrams):

"Oct. 12.

"Telegram received all right. Will ship you one to two hundred bales inch eighth, ten half, average. Strict middling, nothing below middling. You have bought some cheap cotton. Confirm."

"Oct. 13.

"Do you confirm one or two hundred on sale made you to-day? Either amount satisfactory to us. If you want the two hundred will ship. Answer."

Defendant to plaintiff:

"Oct. 13.

"We are in receipt of your telegram offering us the 100 to 200 bales full 1⅛ inch cotton 10½ cts. We have wired you as enclosed confirmation that we would take 200 bales. We will be pleased to have you ship 100 bales of this cotton now and if agreeable we would like to have the other 100 bales shipped any time between Nov. 1st and 10th. We understand this cotton is to be full 1⅛ inch staple, same as the staple in the 25 bale sample lot you shipped to us, the grade to be average strict middling, nothing middling. We desire that you be particular in the selection of this cotton as nothing less than full 1⅛ inch, same type as the sample lot, will be suitable to us. Please route via Birmingham, or Atlanta, and S. A. L. R. R. to Clinton, S. C., as this routing will give us a much quicker shipment."

The principal witness examined for the plaintiff in the trial was a man by the name of Fowler, the owner and general manager of the business of the plaintiff, who conducted the correspondence with defendant. Fowler admitted that the 150 bales which defendant declined to accept was of the same grade and the same character of cotton as the 50 bales which had been sent before with bill of lading attached; and he further admitted that none of the 200 bales, composed, as stated, of the 50 bales first sent under the contract of purchase and the 150 bales which were refused, was of as high grade of cotton as the 25 sample bales; and it was also shown, by the undisputed evidence, that the 25 sample bales was not only a better grade of cotton than the 200 bales, but also commanded a higher price in the market.

The prime question, therefore, is what the contract between the plaintiff and the defendant was. The counsel for the plaintiff contends that the question as to whether the plaintiff complied with the terms of the contract or not was for the jury to determine. It is true,

as a general proposition, that where the issue is one of fact as to the performance of the terms of a contract, it is the province of the jury to pass upon it. But before the question of compliance or noncompliance arises, there must be a determination of the terms of the contract itself. In case of an oral contract, where the parties disagree as to its terms, or an ambiguous written contract, in which testimony aliunde is offered to explain its meaning, the intervention of a jury is often necessary. But in that of a written contract showing the whole of the agreement, couched in terms such as to render it capable of intelligent interpretation, its construction is for the court, and not for the jury. In our opinion, the contract between the parties to this controversy is of the latter kind. It is all contained in the correspondence above set forth, and we think that the intention of the parties to the contract at the time of the correspondence is readily gathered. To our minds there is no uncertainty or ambiguity about it, and a proper construction of it is that the defendant contracted to buy 200 bales of cotton from the plaintiff of the character, grade, and quality of the 25 bales which had been theretofore sent as a sample. There is no contention that the cotton shipped under the contract fulfilled these requirements.

On the other hand, plaintiff admits that it did not. It is a well-settled rule that courts will ascertain what parties to a contract have agreed to by what they have said and by the meaning of the words used to express their intention. This doctrine is elementary.

In this case it appears from the record that defendant's motion for verdict or nonsuit was made at the conclusion of plaintiff's testimony, and that upon the refusal of the court to grant the motion the defendant introduced a witness by the name of Bailey, who testified as follows:

"Mr. Sirrine: Q. State to the jury plainly what you and Mr. Dougherty said that day. A. Mr. Dougherty came into my office the day of the arrival, and I sent over to the warehouse where we had this cotton, this 50 bales of cotton, and had him to go through it, and he came back to my office, and I carried him into my private office with Mr. Smart, and we asked him what he considered the cotton, and he said that he called it 1⅛". We brought out the samples of the 25 bales and laid them beside the desk in which we had the cotton that we had received, and we said to him: 'Do you consider this cotton the same as the 25 bales?' He said: 'I do not.' And he said: 'Well, I would like to make some settlement of this matter.' And we told him we were very anxious to settle it, that we were needing cotton, and were in a straight right now. We asked him what he wished to do, and he said he did not know. I said: 'Well, Mr. Dougherty, we will state our position in this matter, and we will tell you what we will do. If you will have your people to authorize the bank to release the drafts so the railroad people can deliver this cotton to us, you can have our warehouse at your disposal, and you can draw the samples from this cotton, and you can arbitrate according to the Carolina Mill Rules, and if that is not satisfactory you can send them to New York and have them classified, and if, after the cotton has returned, you lose in the case, we will charge you not a cent for the storage of this cotton in our hands.'

"Q. What did he say to that? A. He said he would not do it.

"Q. Did he say anything about his authority to do or not to do that? A. Well, the impression was that he had the full authority.

"Q. You spoke of the Carolina Mill Rules, are these the rules, July 1? 1904

(handing witness book entitled 'Rules Known as the Carolina Mill Rules and Governing Sale of Cotton to Domestic Mills')? * * * A. Yes, sir."

The defendant did not renew the motion at the conclusion of all the testimony. Plaintiff's counsel have made no point, either in the brief or in the oral argument, because of the omission of defendant's counsel to renew the motion for nonsuit at the close of all the testimony. Under these circumstances we think the court may well assume that plaintiff's counsel waived objection, if such there might be, to this failure, and did not intend to take advantage of the omission of defendant's counsel in this respect. We are led, however, to consider this point because of the fact that in the conference of the judges and upon an examination of the record it is called to our attention, and the question has arisen, as to whether or not by this omission the defendant has not forfeited its right to be heard.

In Accident Insurance Company v. Crandal, 120 U. S. 527, 7 Sup. Ct. 685, 30 L. Ed. 740, the Supreme Court lays down the rule that the refusal of the court to instruct the jury at the close of plaintiff's evidence that she was not entitled to recover cannot be assigned for error, because the defendant, at the time of requesting such instructions, had not rested its case, but afterwards went on and introduced evidence in its own behalf. In support of this decision, the Supreme Court cites Grand Trunk Railway Company v. Cummings, 106 U. S. 700, 1 Sup. Ct. 493, 27 L. Ed. 266, in which it was held that the refusal to direct a verdict on motion of defendant at the close of plaintiff's testimony could not be reversed, if the defendant, after such refusal, offers testimony which does not appear in the record. · The reason for the principle laid down in the case last cited is readily apparent: That although the testimony offered by plaintiff may not, in itself, have been sufficient to warrant a verdict, yet the court was entitled to see what effect the testimony of defendant, subsequently offered, may have had upon the issues involved, for it frequently occurs in the trial of causes that the testimony of the defendant, upon cross-examination of witnesses or disclosures otherwise made, has the tendency to strengthen rather than weaken plaintiff's case. It was therefore important that the defendant's testimony should be set out in the record, that the court might see and determine, upon all of the testimony, as to whether or not the case should have gone to the jury. This view seems to be strengthened by the opinion in Northern Pacific Railroad Company v. Mares, 123 U. S. 710, 8 Sup. Ct. 321, 31 L. Ed. 296. When all of the evidence had been submitted, the defendant demurred to the evidence and moved the court to dismiss the action, which the court refused to do. Thereupon the defendant requested the court to direct a verdict, which was also refused and exception taken. The Supreme Court, in the opinion, says that:

"The question raised by the ruling and the exceptions thereto is whether there was sufficient evidence to justify the court in submitting the case to the jury."

Then the court proceeds to state the fact which the evidence tends to establish and decides that there was enough to go to the jury on the question involved in the case, viz.:

"That the defendant, by the negligence of an engineer in its employment, caused the injury to the plaintiff."

The testimony of the witnesses offered by the defendant in the case now under consideration in no way affects that offered by the plaintiff. It corroborates, substantially, the testimony of the agent of plaintiff, to the effect that the 150 bales of cotton which the defendant refused to accept was not of the same character or grade as the 25 bales which were sent to the defendant by the plaintiff as a sample. This is all the testimony of defendant's witness which we deem material; the remainder of it pertaining to negotiations between the parties after the refusal to accept the 150 bales looking to an amicable adjustment of the controversy. We do not think that the rule of practice laid down in Grand Trunk Railway Company v. Cummings and in Insurance Company v. Crandal, above cited, applies in the case before us. The principle in our case is that there was no issue of fact for the jury at all, upon any of the evidence or upon all of the evidence. The question was one solely for the court—the construction of a written contract, plain in its terms. There was no contradiction as to the telegrams and letters which contain the terms of the contract; these being capable of intelligent construction, setting out the agreement of the parties in unmistakable terms that plaintiff agreed to deliver to the defendant a certain grade of cotton like a sample lot of 25 bales shipped by the plaintiff to the defendant in the outset. The plaintiff admitted that the cotton in controversy was not of that grade, but contended that the contract did not call for it. The defendant's witness simply corroborated the fact that the cotton shipped was not of the quality and grade of the sample lot. The construction of the contract, as set forth above in this opinion, being for the court, there was no issue of fact for the jury. In all of the cases we have examined on the point we are now discussing, there was some evidence relating to the fact at issue, and the rule was laid down that if a defendant failed, after introducing testimony, to renew the motion to direct a verdict made at the close of plaintiff's case, the refusal of the trial court to grant the motion could not be assigned as error.

We regard Insurance Company v. Crandal and Railroad Company v. Mares, supra, as the leading authorities upon the point in question, and it will be observed that in both of these cases, the motion was that the court instruct the jury to return a verdict for the defendant. A motion of this character invoked the power of the court, after considering the testimony and all of it in its various aspects, and giving to it and every part of it its due weight, with all legal and reasonable inferences to be drawn therefrom, to determine whether or not it was sufficient to warrant a verdict for the plaintiff. But such is not the situation in the case here. The motion of defendant's counsel was not to direct a verdict, but nonsuit the plaintiff on the ground that the contract required of it the delivery of a certain grade of cotton, according to a sample which had theretofore been furnished, and, if such were the contract, plaintiff admitted the nonperformance, and therefore could not maintain its action against the defendant for an alleged breach. The motion of defendant was based solely upon a prop-

osition of law, and no issue or question of fact was involved. We do not think therefore that any question in regard to the rule of practice referred to arises. We construe the contract as we have before stated in this opinion, and, such being our construction, with plaintiff's admission of nonperformance, there was not even a scintilla of evidence to go to the jury to support a finding for the plaintiff. We think the learned judge on the trial court should have entered a nonsuit, as requested by defendant, and the refusal to do so was error.

There is error, for which the judgment of the Circuit Court is reversed.

Reversed.

McDOWELL, District Judge, dissents.