## BROWN–CRUMMER INV. CO. v. KOSS CONST. CO.

(Circuit Court of Appeals, Eighth Circuit. March 9, 1925.)

No. 6537.

1. Contracts ⟨⟩176(1)—Where terms of contract not disputed, language unambiguous, and facts and circumstances not in dispute, construction is question of law.

Where terms of contract are not in dispute, the language clear and unambiguous, and facts and circumstances which led up to it not disputed, construction is question of law.

2. Contracts ⟨⟩323(2)—Whether undisputed facts show performance of contract is question of law.

Where facts relied on to show performance of contract are not disputed, question whether they constitute performance is one of law for court.

3. Contracts ⟨⟩280(1)—Municipal bond dealer held to have performed contract with bridge contractor for purchase of municipal bonds, and entitled to recover agreed discount.

Where contract between plaintiff, dealer in municipal bonds, and defendant, bridge contractor, for purchase by plaintiff of bonds to be issued by city in payment for construction of bridge, contemplated that plaintiff would purchase bonds from city at par, that city would thereafter pay defendant's estimates in cash, and that defendant would pay plaintiff from each estimate an amount equal to 7½ per cent. thereof, held, fact that plaintiff could not arrange to purchase bonds from city at par, but did purchase them at a competitive sale at a price in excess of par, did not preclude its recovery from defendant of agreed discount, on theory that city had elected to sell bonds itself and make payment in cash, and that plaintiff had not, therefore, performed its contract.

In Error to the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Action by the Brown-Crummer Investment Company against the Koss Construction Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded, with directions.

Austin M. Cowan, of Wichita, Kan. (Chester I. Long, J. D. Houston, Claude I. Depew, James G. Norton, and James G. Martin, all of Wichita, Kan., on the brief), for plaintiff in error.

Fred A. Little, of Des Moines, Iowa (Harley H. Stipp, Eugene D. Perry, Robert J. Bannister, and Vincent Starzinger, all of Des Moines, Iowa, and Vermilion, Evans, Carey & Lilleston, of Wichita, Kan., on the brief), for defendant in error.

Before SANBORN, Circuit Judge, and TRIEBER and PHILLIPS, District Judges.

PHILLIPS, District Judge. The Brown-Crummer Investment Company, hereinafter called plaintiff, brought this action against the Koss Construction Company, hereinafter called defendant, to recover upon a written contract the sum of $3,186.05. The plaintiff, a Kansas corporation, was engaged in the business of buying and selling municipal bonds. The defendant, an Iowa corporation, was engaged in the construction business.

On July 30, 1921, the plaintiff, knowing that the defendant was about to submit a bid to the city of Wichita, Kan., for the construction of a bridge in that city, referred to as the Maple Street bridge, wrote a letter to the defendant wherein plaintiff stated that the contract with the city would be paid in bonds and that the plaintiff would be interested in purchasing such bonds from the defendant should the latter be awarded the contract for the bridge.

On August 9, 1921, the plaintiff and defendant entered into a contract, the material portions of which read as follows:

"The first party [defendant] contemplates the submission of a bid for the construction of certain bridges in the city of Wichita, to be filed August 9th, and in the event of an award of the contract, payment therefor will be made in city of Wichita 5 per cent. bonds maturing one-tenth annually from 10 to 20 years in the approximate amount of $175,000.

"It is therefore mutually agreed that, should said contract be awarded to the first party they hereby agree to sell and second party [plaintiff] hereby agrees to buy said bonds at the net price of $925 per thousand, delivered in installments as and when the first party may present same for payment at the office of second party in the city of Wichita."

On August 10, 1921, the city and defendant entered into a contract for the construction of the bridge, the portions of which, material to this cause, read as follows:

"For and in consideration of covenants promised and agreed to by said second party [the defendant] the first party [the city] will pay to said second party at the option of the city, either in cash or internal improvement bonds of the city of Wichita issued for said improvement, the following prices per unit for work commenced and completed. Said bonds to be five (5%) per cent., interest payable semiannually, maturing one-tenth (¹/₁₀) each year from ten (10) to twenty (20) years after date of issue.

"That the total price to be paid by said city to said contractor shall be the sum of one hundred thirteen thousand three hundred forty-three and no/100 ($113,343) dollars for said bridge completed and the sum of three and 70/100 ($3.70) dollars per square yard for completed pavement, consisting of approximately eighteen hundred (1,800) square yards.

"The second party shall be entitled to 85 per cent. estimates every thirty days during the prosecution of said improvement; 15 per cent. of the total amount being at all times reserved until final completion at which time second party shall be entitled to a final estimate."

After the construction contract had been awarded to the defendant, and on August 10, 1921, the defendant signed and delivered to plaintiff two letters.

One was addressed to the plaintiff and read as follows:

"In consideration of your purchase from us of approximately $125,000 5 per cent. 10 to 20 year serial bonds of the city of Wichita for bridge purposes, we hereby agree to pay you the sum of $75 per thousand on each $1,000 in bonds as follows: As estimates are due us from the city and funds are withdrawn by us for the construction of the Maple Street bridge for which the above bonds are issued, we are to pay the Brown-Crummer Company 7½ per cent. of the amount of said estimates until the total of $75 per thousand on each $1,000 in bonds has been paid."

The other was addressed to the city of Wichita and read as follows:

"We have sold to the Brown-Crummer Investment Company, Wichita, Kan., the Maple Street bridge bonds of approximately $125,000, to be dated not later than September 1, 1921, bearing 5 per cent. interest from date, maturing one-tenth annually from 10 to 20 years after date, and hereby request that your city deliver above-named bonds to said Brown-Crummer Company upon payment to you of the sum of $1,000 for each $1,000 in bonds delivered."

On August 12, 1921, the plaintiff addressed and forwarded to the defendant a letter, the material portions of which read as follows:

"In reference to the contract entered into by our company with the Koss Construction Company through your representative, Mr. L. V. Hites, on August 9, 1921, for purchase from you of the city of Wichita bridge bonds in the approximate amount of $120,000, no doubt Mr. Hites has reported to you regarding this transaction and the method by which we are attempting to handle the matter in regard to delivery of bonds and payment of the discount.

"It is understood between our company and Mr. Hites that in the event we succeed in obtaining a delivery of the entire issue of bonds at once from the city of Wichita by our making arrangements to pay for same direct to city a flat par value, that when the city meets your estimates monthly you will upon receipt of said estimates return to us at once 7½ per cent. of the amount for discount on the bonds.

"It is further understood and agreed between Mr. Hites and this company that should the above arrangement be made in regard to delivery of bonds and our obtaining the use of the money therefor until monthly estimates are paid, we will pay the difference between 6 per cent. and a total maximum rate charged up to 8 per cent., on such funds as your company may borrow on account of the Maple Street bridge building program up to $30,000, whether the loan shall be negotiated with Wichita banks or banks in other localities."

On August 13, 1921, the defendant addressed and forwarded to the plaintiff a letter in reply to the letter last above set out, the material portions of which read as follows:

"In consideration of the purchase of these bonds at par by you from the city of Wichita, we agree upon receipt of monthly estimates and final estimate to pay you from the proceeds of estimates 7½ per cent. of the estimate to cover discount on the bonds in order to make the sale of bonds at 92.5 to you.

"Also, in consideration of our indirect sale to you of the bonds at 92.5, you agree to pay the difference between 6 per cent. and a maximum rate of 8 per cent. interest on such funds up to $30,000, that we will want to borrow from a Wichita bank or banks."

Shortly thereafter an informal meeting was held between the plaintiff and the mayor and members of the city commission looking to a sale and delivery of the entire issue of bonds to the plaintiff. There is some dispute in the testimony regarding the result of this meeting. R. E. Crummer, vice president of the plaintiff company, testified that the city officials agreed the bonds would be delivered to the plaintiff, but that the mayor stated he expected to be absent from the city for a period of about six weeks and asked that the matter be held in abeyance until his return. E. C. Elliott, city manager, testified that the proposal was rejected. W. C. Kemp, mayor, testified that the proposal was not rejected, but left open.

The first estimate was paid in bonds to the defendant, the bonds were delivered to the plaintiff, and plaintiff's check for the amount of the estimate, less a discount of 7½ per cent., was given to the defendant. When the second estimate became due, some dispute arose about matured interest on the bonds, and the plaintiff advanced to the defendant the amount of the estimate, less the discount of 7½ per cent. Later the city's warrant for that estimate was indorsed and delivered to the plaintiff. In October, 1921, it not being possible to arrange the $30,000 loan through the Wichita banks, in lieu thereof, the plaintiff loaned to the defendant for a period of six months $30,000 at 6 per cent. interest.

Early in December, 1921, the plaintiff learned that the city manager had tentatively arranged a sale of the balance of the bonds to the Fourth National Bank of Wichita for par, plus a premium of $10 a thousand. Plaintiff protested to the city manager against the making of this sale and insisted that the bonds should be delivered to the plaintiff. At a meeting of the city commission held December 6, 1921, the matter was taken up for consideration, and plaintiff appeared and again protested against the sale of the bonds to the Fourth National Bank, and insisted that the bonds should be delivered to the plaintiff. The commission requested plaintiff to waive any claim it had against the city and permit

the city to offer the bonds to the highest bidder. The plaintiff, knowing it was in a position, because of its contract with defendant, to make the highest bid, agreed to the proposal. Thereupon the commission received bids for the bonds. The plaintiff was the highest bidder, its bid being par, accrued interest, a premium of $2,800, and 5 per cent. interest on daily balances, and the bonds were sold and delivered to it.

Thereupon the plaintiff company advised the defendant, by letter dated December 10, 1921, that it had made arrangements with the city whereby it had accepted delivery of the entire issue of the bridge bonds, and that the remaining estimates would be paid in cash, and requested the defendant to forward checks for 7½ per cent. of such estimates as they were allowed. Accordingly, on December 12th, the defendant remitted its check for $562.50 in payment of the discount on the third estimate of $7,500. Thereafter the defendant learned that the bonds were secured through competitive bids and took the position that the city under its construction contract had exercised its right to elect to pay cash and sell the bonds in the open market; that the bonds had been offered by the city and purchased by the plaintiff in the open market; that the contract between plaintiff and defendant was contingent on the city paying the estimates in bonds, and not in cash; and that it was relieved from any further liability to pay the discount upon the third and all subsequent estimates. On the other hand, the plaintiff contended that it had purchased the bonds from the city in compliance with its agreement with the defendant, as modified by letters of August 10, 12, and 15, 1921, referred to above, and was entitled to the discount upon the estimates. The evidence disclosed the foregoing facts without dispute, except as to the result of the informal meeting of plaintiff with the mayor and city commission.

Plaintiff made demand upon the defendant for the payment of the discount on the subsequent estimates. Defendant demanded that plaintiff return the sum of $562.50 paid to plaintiff as discount on the third estimate. The respective demands having been refused, plaintiff brought this action to recover the amount of the discount on the estimates subsequent to the third, and defendant counterclaimed to recover back the discount paid on the third estimate.

The cause came on for trial. At the close of the evidence, both plaintiff and defendant moved for a directed verdict. The court overruled both motions and submitted the case to the jury upon the theories contended for by the parties. The jury found in favor of the defendant, and gave a verdict for the amount of the discount paid on the third estimate. Judgment was entered on the verdict. Plaintiff sued out a writ of error to this court.

The plaintiff assigns as error, among other things, the overruling of its motion for a directed verdict.

[1] The action was not brought to recover damages for a breach of contract for the sale of the bonds. It was brought to recover the amount of the discount which the defendant agreed to pay under the letters of August 12 and 13, 1921, upon the theory that the plaintiff had purchased the bonds from the city in conformity with the agreement contained in those letters. A determination of plaintiff's right to recover involved a construction of the contract and an ascertainment of whether or not plaintiff in acquiring the bonds performed its part of the contract. There was no dispute as to the terms of the contract. The language used therein was clear and unambiguous. There was no dispute as to the facts and circumstances which led up to the making of the contract and which surrounded the parties at the time they entered into the same. The construction of the contract therefore was a question of law for the court. Empire Fuel Co. v. Lyons (C. C. A. 6) 257 F. 890, 895, 169 C. C. A. 40; Bell et al. v. Bruen, 42 U. S. (1 How.) 169, 182, 11 L. Ed. 89; Ringrose Co. v. Sloane (C. C. A. 3) 272 F. 445, 447; Pope & Co. v. Bibb Mfg. Co. (C. C. A. 2) 290 F. 586; Hurin v. Electric Vacuum Cleaner Co. (C. C. A. 6) 298 F. 76; Lydia Cotton Mills v. Prairie Cotton Mills (C. C. A. 4) 156 F. 225, 233, 84 C. C. A. 129; Burgie v. Hicks (D. C.) 203 F. 340, 349.

[2] Likewise there was no dispute as to the facts relied upon by the plaintiff to show performance of the contract by it. When the facts are undisputed, whether or not they constitute performance of the contract is a question of law for the court. 13 C. J. p. 790, § 1011; Stolz v. City of Syracuse, 59 Misc. Rep. 600, 111 N. Y. S. 467, 468; Id., 134 App. Div. 993, 119 N. Y. S. 1146; Avgikos v. Lowry, 54 Utah, 217, 179 P. 988, 990.

[3] The contract between plaintiff and defendant is found in the memorandum agreement entered into August 9, 1921, as amended and supplemented by the letters of August 10, 12, and 13, 1921, and the

arrangement relative to the $30,000 loan consummated in October, 1921.

Defendant contends that under the construction contract the city could elect to pay any estimate either in cash or bonds, that the contract between the plaintiff and the defendant was for the sale by defendant to plaintiff at a discount of 7½ per cent. of only such bonds as the city elected to issue in payment of estimates under the construction contract, that the only effect of the supplemental letters was to arrange for a delivery of such bonds directly from the city to the plaintiff, and that they did not provide for a purchase of all the bonds by the plaintiff directly from the city and the payment by the defendant to the plaintiff of an amount equal to 7½ per cent. of the estimates.

Plaintiff, in its letter of August 12th to defendant, said:

"In the event we succeed in obtaining a delivery of the entire issue of bonds at once from the city of Wichita by our making arrangements to pay for same direct to city a flat par value, that when the city meets your estimates monthly you will upon receipt of said estimates return to us at once 7½ per cent. of the amount for discount on the bonds."

In replying thereto, the defendant in its letter of August 13th said:

"In consideration of the purchase of these bonds at par by you from the city of Wichita, we agree upon receipt of monthly estimates and final estimate to pay you from the proceeds of estimates 7½ per cent. of the estimate to cover discount on the bonds in order to make the sale of bonds at 92.5 to you."

The contract price under the construction contract was not to be paid by the city in advance, but either in cash or bonds in monthly estimates during the progress of the work and in a final estimate after the completion. It contemplated no immediate delivery of the bonds. On the other hand, the letters of August 12th and 13th contemplated that the plaintiff should purchase the bonds directly from the city, obtain immediate delivery of them, and pay the city par therefor; that thereafter the city would pay its estimates in cash; and that upon the payment of each estimate by the city, the defendant would pay the plaintiff an amount equal to 7½ per cent. thereof. No other meaning can be given to the language of the letters of August 12th and 13th.

The question remains: Was the purchase of the bonds by the plaintiff a substantial compliance with the contract? The purchase was made at a price in excess of par, at a competitive sale, and several months after the making of the contract. We do not believe the provision of the contract that plaintiff was to pay the city par value for the bonds was violated by the plaintiff paying in excess of par. The purpose of the parties in providing that the purchase should be at par was to provide sufficient funds to meet the estimates. A purchase at a price above par just as effectually performed the contract and met the purpose in the minds of the contracting parties as a sale at par would have done. The contract in no way restricted the manner in which the bonds were to be purchased. A purchase at competitive auction was just as much a purchase within the terms of the contract as would have been a purchase at private sale. Apparently defendant made no complaint of the delay, it took advantage of the supplemental arrangement for the $30,000 loan at 6 per cent. in October and recognized the contract in force and effect in December by paying the discount on the December estimate. We hold the facts showed a substantial compliance with the contract by plaintiff.

The defendant, in making its bid to the city, took into consideration that it would be paid in bonds worth 92.5 cents on the dollar. Therefore to require the defendant to reimburse the plaintiff for the discount will work no injustice upon the defendant.

We are of the opinion that the plaintiff was entitled to a directed verdict, and that the court erred in denying its motion therefor. The cause is remanded, with directions to grant the plaintiff a new trial.