# CUB FORK COAL CO. et al. v. FAIRMOUNT GLASS WORKS.

Circuit Court of Appeals, Seventh Circuit.
June 12, 1929.

Rehearing Denied July 18, 1929.

No. 4109.

Connor Hall, of Huntington, W. Va., for appellants.

Kurt F. Pantzer, of Indianapolis, Ind., for appellee.

Before ALSCHULER, EVANS, and ANDERSON, Circuit Judges.

EVAN A. EVANS, Circuit Judge. This action was brought to recover damages for breach of a written contract for the sale of 17,500 tons of coal. Judgment was for the defendant dismissing the action following a general verdict in its favor.

Appellants assign errors which challenge (a) the court's ruling upon their motion for a directed verdict and (b) the soundness of certain instructions given by the court to the jury. Appellee, on the other hand, while not assigning error, insists that appellants were not prejudiced by any instructions given because, under the most favorable view of the testimony, plaintiffs had not presented a single issue which called for its submission to the jury.

The same case was before us on a previous appeal. 19 F.(2d) 273.

The contract provided, among other things:

"Fairmount Glass Works, Indianapolis, Ind., has this day bought of the W. E. Deegans Coal Company, Huntington, W. Va. Quantity: 17,500 tons. Price: $6.50 per net ton fob mines.

"Shipments made by the Seller to the Buyer during any one month shall constitute fulfillment (of this contract for that month) and the tonnage herein contracted shall be cumulated only for such one-month period, except by mutual agreement.

"(d) It is expressly understood that the price or prices named herein are based on existing rates of pay for all mine labor and the price or prices will be subject to readjustment in event existing rates of pay are changed."

Plaintiffs proved the execution of the contract, the delivery of coal thereunder, the giving of notice by defendant to cease further deliveries, and damages. Upon this showing, they contend they were entitled to a directed verdict. They assert that they offered to accept the lowest amount recoverable under the testimony and thereby avoided the only issue that could have been properly submitted to the jury.

Defendant advances three reasons for rejecting appellants' argument:

(1) The contract was never breached by it.

(2) It insists that it never contracted with plaintiffs. Moreover, it asserts it made its position clear when entering into the contract that it would not deal with the agent or broker. Plaintiffs reply by contending: (a) That the seller, W. E. Deegan Coal Company, was plaintiffs' agent in selling the coal and that immediately upon the execution of the contract plaintiffs accepted it and obligated themselves to deliver the coal as by the contract specified. (b) They also urge that the contract and cause of action against defendant was duly assigned to them prior to the commencement of the suit. (c) Defendant, with full knowledge that the Deegan Coal Company was only an agent of plaintiffs, ratified the contract and called for its fulfillment according to its terms.

(3) Defendant contends that the agreement was terminated by the contingency provided for in paragraph (d) of the contract. The failure of the parties to make a readjustment as provided in the agreement relieved defendant of its obligation to accept further deliveries.

■ *Breach of Contract.*—The evidence on this issue does not rise to the dignity of a conflict or dispute. On December 4th defendant wired seller: "Stop all shipments to us until further notice. See Letter." The letter contained the following:

"We wired you today as follows: 'Stop all shipments to us until further notice. See letter.' This will also give you a chance to consider whether you will be able to revise your prices to the market price, prevailing at present. We have been offered good gas Coal today, Mine Run at $4.25 per ton at the Mines and we look for it to come down still lower. There is plenty of Coal to be had now and while you have a contract with us at $6.-50 for Egg Coal, you have not lived up to same, and we have a right to ask you to reduce your price."

In its letter of December 1st, defendant wrote: "We are figuring on curtailing production for the next month or so and we now have a good supply of Coal on hand. While you were not shipping us sufficient Coal to operate, we had to go out and buy about 30 cars and some of it is coming in now. We are buying some of this Coal as low as $4.40 for first-class Eastern Kentucky Gas Coal and we are buying W. Virginia Gas Coal for $5.00. We think you should come down on your price and meet the prevailing prices now being offered. There is plenty of Coal in the market and we look for Coal, in the next week or two, to go down to as low as $4.00. Please let us know whether you intend to cut our price."

Subsequent to this correspondence, seller addressed to defendant an invoice of four cars of coal dated December 9th. Defendant replied refusing to accept the coal. We quote from the letter: "We received invoice this morning covering four cars of coal after we had notified you by wire and letter on

December 4th to ship no more coal. * * * You had no right to ship these four cars of coal as we had notified you to discontinue shipments. We will refuse the four cars shipped December 9th. We wired you December 4th to stop all shipments. We ask that you kindly give disposition of this coal promptly."

On the same day seller wrote defendant to the effect that three of these four cars did not move to them. Defendant subsequently unloaded the one car that arrived and paid for it. On December 30th, seller wrote defendant to ascertain whether defendant would take any coal during the month of January, and on January 1st defendant replied: "We were left with quite a stock of raw material on our hands and we are trying to work it up and just as soon as we need more coal we will take the matter up with you relative to shipments and adjusting prices."

This represents all of the documentary testimony on this issue. The oral testimony which supplements it is limited to an alleged interview between representatives of the two concerns the obvious purpose of which was to adjust differences. Defendant's president testified that the conversation was about prices—"getting lower prices"—and that "he told plaintiffs that when they needed more coal they would have them to ship it."

Upon this evidence, no jury question was presented as to this issue. Brown-Crummer Inv. Co. v. Koss Const. Co. (C. C. A.) 4 F.(2d) 682; Empire Plow Co. v. Berthold & Jennings Lumber Co. (Mo. App.) 237 S. W. 137; Smith v. United Traction & Electric Co., 168 N. Y. 597, 61 N. E. 1134; Hixson Map Co. v. Nebraska Post Co., 5 Neb. (Unof.) 388, 98 N. W. 872; Avgikos v. Lowry, 54 Utah, 217, 179 P. 988.

The contract specified the price and fixed the dates of delivery. Defendant had no right to make its acceptance of the coal, its compliance with the terms of its contract, depend upon the seller's agreement to lower the contract price. Defendant could not refuse shipments in violation of its contract. Certainly it could not buy coal elsewhere at a lower figure and then object to delivery under contract on the plea that it was well supplied with coal. We think the letters and oral testimony both evidence a clear intention to go no further with this contract unless seller reduced the price of its coal. Upon this issue, the court should have charged the jury that the contract had been breached.

█ *Change in Price of Labor.*—Respecting the application of paragraph (d) of the contract and the rise in the price of labor, we are

equally certain that no excusable defense is disclosed. The contract called for a readjustment of price in case existing rates of miner's pay were changed. The wages paid to miners were raised during the period covered by the contract. Plaintiff did not insist upon an increase in the price of coal. Obviously defendant cannot avoid its contract because of an unexercised right of the seller to increase the price.

Had the seller exercised its right to raise the price the readjustment would have been merely a mathematical problem. The increase would have represented the sum which measured the increased cost of labor. This was sufficiently definite so that it would not have necessitated another "meeting of the minds" of the contracting parties. The new price would have been the contract price plus the new item which was definite or capable of being made definite. Solter et al. v. Leedom (C. C. A.) 252 F. 133. It was error to submit this issue to the jury.

██ *Avoidance of Contract Because Principal was Undisclosed.*—Defendant's chief reliance for an affirmance of the judgment is predicated on the argument that the seller did not disclose its true character when it sold the coal—that it was not in fact the seller, as it represented itself to be, but the agent of undisclosed principals, plaintiffs herein; that defendant made its position clear when contracting with the seller that it would not purchase coal of a broker or agent; that it "only contracted with a company that owned the mines."

The evidence showed that neither the Deegans Coal Company nor the plaintiffs owned the fee on which the mines were situated, but that a third company, the Dingus Coal Company, was the owner of the land. Plaintiffs, however, operated the mines and mined the coal.

It is not exactly clear what was meant by the word "owner." The most that plaintiffs could contend for is that "the owner" included the company or companies that leased and operated the mines. It certainly did not include the broker or agents who represented the coal mining companies.

Plaintiffs' first contention, that the contract was with the owners—the operators, of the coal mining company—and therefore meets defendant's objection, ignores the testimony to the effect that the contract was made only after the *seller* stated *it* was the owner of the mines, and that the defendant stated it would not contract with "a broker or agent." In short, if defendant's testimony upon this question be accepted, the seller

falsely represented that it was the owner, when it knew that defendant would never have contracted with it as an agent or broker.

Plaintiffs' final contention cannot be so easily disposed of. Their position in brief is that defendant, with knowledge that the Deegans Coal Company was but the agent of plaintiffs, the operators of the coal mines that produced a coal known as Parragon and Cub Fork, ratified the contract and demanded its performance.

As bearing upon this contention, the following facts are significant: From July 1st to about December 1st, the market price of coal of the character described in the contract was higher than the contract price. Up to November 1st plaintiffs had not delivered all of the coal specified in the contract. Its asserted excuse was a failure to obtain the necessary cars from the railroads. In September there was an increase in the pay of the miners which, under the contract, was to reflect itself in an increased price of coal. The increase in the price of coal was requested. Defendant replied by calling attention to the seller's failure to deliver all of the coal called for in the contract and offered this fact as a reason why the price should not be raised. It was at this point that the seller made known its true position, so it contends. In a letter bearing date Nov. 1st, 1920, it wrote defendant: "We have taken the matter of increase in cost up with the mine and they have agreed to waive the privilege accorded them in Clause 'D' and make no advance on this as the result of the wage increase effective September 1st."

If it can be said that this letter gave notice to the defendant that the seller was but the agent of the plaintiffs or the operators of the mines, then it is clear the defendant thereafter waived its defense. For, after receiving this letter, it demanded the shipment of coal under the contract and obtained some 2,000 tons when the market price exceeded the contract price. In other words, having insisted upon the performance of the contract with seller and at a time when it profited by so doing, defendant cannot thereafter repudiate the contract when it becomes unprofitable so to do. We are not satisfied, however, that the letter was conclusive on the question of notice. It rather persuasively points that way. Nevertheless, we think it was for the jury to determine whether defendant had notice of the seller's true position when it demanded delivery of more coal.

In support of plaintiffs' argument and the inferences to be drawn from the letter, there were the checks which defendant drew

to the seller and which the seller indorsed to the plaintiffs. On the other hand, it may be argued for defendant that the seller's reference of the disputed matter to the mining company was due to some contractual agreements existing between seller and plaintiffs. Everything considered, we think the issue should have been submitted to the jury.

It follows that plaintiffs' motion for a directed verdict was properly denied. The court's submission of two issues to the jury which should have been answered by the court in plaintiffs' favor was error for which *the judgment must be reversed.*

The judgment is reversed with directions for a new trial.