### HOROWITZ v. BUTLER MILL, Inc.
### No. 138.

Circuit Court of Appeals, Second Circuit.
Jan. 16, 1933.

McKercher & Link, of New York City (George Link, Jr., of New York City, and William M. Butler, of New Bedford, Mass., of counsel), for defendant-appellant.

Isidore Lowenbraun, of New York City, for plaintiff-appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an action at law to recover damages for a breach of contract. The complaint alleges that the plaintiff and defendant entered into an agreement for the sale by plaintiff to defendant of certain merchandise at the agreed price of $5,615.10, that, pursuant to the agreement, the plaintiff sold and delivered the merchandise, and that no part of the purchase price has been paid, though duly demanded. A copy of the agreement annexed to the complaint provided for the sale of "7,000 lbs. 100 Denier Cupraamonium Yarn as had." The price specified was 85 cents per pound. There was the further provision that the sale was "made without warranty of any kind except as herein expressly agreed."

The defendant filed an answer containing a general denial and a counterclaim. The counterclaim alleged that the parties agreed that the yarn contracted for would be the same in every respect as a sample previously presented by the plaintiff to the defendant, but that the yarn delivered did not in fact conform to the sample. The answer also alleged that the plaintiff requested the defendant to try to use the yarn so delivered in its manufacturing processes and agreed to reimburse the defendant for any loss that it might sustain by reason of such attempted use of the yarn. It further alleged that the yarn could not be manufactured into cloth without prohibitive expense, that the defendant rejected it and notified the plaintiff to give shipping instructions for the yarn on hand.

Thirty-two cases of Cupraamonium yarn, amounting to 6,606 pounds, and worth, if corresponding with the yarn contracted for, $5,615.10, were delivered to the defendant in the latter part of June, 1929. On the 23d of January preceding, the plaintiff had sent to the defendant a sample of 10 pounds 100 Denier Cupraamonium yarn. A letter was put in evidence dated January 23, 1929, which the defendant denied receiving, which stated that: "Of the 100 Denier we have approximately 7,000 lbs. spot. * * *" On February 4, 1929, the defendant wrote plaintiff as to this and another sample, saying: "We have tried out the samples and find they are not satisfactory. * * * If we are in the market in the near future we will again take up the matter with you."

Evidence was introduced at the trial indicating that the 6,606 pounds of yarn delivered in June was inferior to the sample submitted the preceding January, and was of such poor quality that it would not make merchantable cloth, whereas the yarn from the sample would make merchantable cloth. There was likewise evidence that plaintiff's representative Roscott requested the defendant to open some of the cases in which the yarn had not been tested and try to "process" it, and assured the defendant that the plaintiff would reimburse it for the cost of making such test runs. There was also evidence that the expense of making this test amounted to $211.

The plaintiff contended at the trial that the yarn was sold "as are," and not "as had." The trial court submitted the case to the jury on the theory that, though the words "as had" ordinarily mean "according to sample," their meaning under the particular circumstances of the case was ambiguous because the letter of January 23, 1929, which the plaintiff claimed to have sent the defendant and which on its face referred to the sample of 10 pounds Denier Cupraamonium, in itself provided for a sale "as are." The defendant said that, when the contract of June 22 was made, the arrangement of January had ended, and accordingly argued that the June contract which provided for a sale "as had" could only relate to a sale as per sample. In other words, the words "as had" did not refer

to the terms of the January sale "as are," but to the sample of 10 pounds Denier then submitted.

The trial court left it to the jury to determine the meaning to be attached to the words "as had" in the contract of June 22, 1929, and it returned a verdict for the plaintiff upon which a judgment was entered from which this appeal is taken.

■■ In our opinion there was no ambiguity about the meaning of the phrase "as had." In itself it has a perfectly definite meaning conceded by both parties. The fact that a former contract in which a sample was submitted was made "as are," i. e., according to the run of the mill, can have no bearing on the later agreement. The plaintiff prepared the agreement of June 22 himself. He had been engaged in the business for years and was thoroughly familiar with the meaning of trade terms. When he inserted the words "as had," they not only must be resolved in a way most favorable to the defendant because the contract was written on plaintiff's own form (Moran v. Standard Oil Co., 211 N. Y. at page 196, 105 N. E. 217), but they can have no other meaning than the one which the defendant seeks to attribute to them. They were used not to refer to a former contract, but to a sample of yarn previously delivered. Such a reference, though no sample was present or in existence at the time of the sale in June, 1929, was in effect a sale by sample because it pointed out a known and ascertainable standard. Zabriskie v. Central Vermont R. R. Co., 131 N. Y. 72, 29 N. E. 1006; Lydia Cotton Mills v. Prairie Cotton Co. (C. C. A.) 156 F. 225; Cudahy Packing Co. v. Narzisenfeld (C. C. A.) 3 F.(2d) 567, at page 571. We think the court was plainly in error in allowing the jury to determine the meaning of the words "as had." They inevitably referred to the sample. Indeed, they not only ordinarily have such a reference, but their use, instead of that of the words "as are" previously employed in the letter of January 23, made a contrast which accentuated the fact that the sale was "as had," i. e., according to the sample submitted. In other words, the letter of January 23 strengthened rather than militated against defendant's position.

■ The only question relating to the performance of the contract of sale by the plaintiff for the jury to consider is whether the goods delivered corresponded with the sample. Even that did not exist upon the record before us, for the undisputed evidence was to the effect that the merchandise delivered was inferior to the sample.

The defendant excepted to the charge of the court as follows: "Mr. Link: I except to that portion of your Honor's charge in which your Honor leaves it as an issue of fact for the jury to determine as to whether or not this was a sale by sample"—and requested the court to charge: "That the terms of the contract of June 22nd, 1929, are paramount and that there is no ambiguity therein, and that the said contract constitutes a sale by sample. That before the plaintiff can recover in this action the plaintiff must prove by fair preponderance of the evidence that the rayon delivered pursuant to the contract of June 22nd, 1929, conformed to the sample submitted by the plaintiff." This request was refused by the court, and the defendant duly excepted.

The defendant requested the court to charge: "That the term 'as had' in the contract refers to the sample previously submitted by the plaintiff"—which the court refused to do, and the defendant excepted.

The defendant further requested the court to charge that "there was an implied warranty that the rayon shipped pursuant to the June 22nd, 1929 contract was similar to the sample, and before the plaintiff can maintain his action he must prove that the implied warranty was not breached." This request the court refused, and the defendant excepted.

The defendant requested the court to charge: "that the sale was by sample and that the bulk of the merchandise did not conform to the sample, and that under these circumstances the defendant had the absolute right to offer to return the merchandise to the plaintiff and at the same time maintain its action against the plaintiff for the damages which the defendant sustained by reason of the plaintiff's breach." This request was refused by the court and the defendant excepted.

It is evident from what we have already said that each of the foregoing rulings was erroneous and requires a reversal of the judgment. It is also plain that the plaintiff made no case, and the defendant was entitled to a nonsuit.

■ Upon a new trial, we think the question of the authority of Roscott to request the defendant to process some of the yarn and to promise to pay for expense in so doing should be submitted to the jury. Roscott was a salesman for the plaintiff, and, when de-

fendant's witness Adams told the plaintiff, Horowitz, about the bad condition of the yarn, he was referred to Roscott. This certainly was some evidence that Roscott was authorized to work out the problem confronting the parties and to attempt to minimize damages by arranging for some further experiments with the yarn so that it might be retained by the purchaser.

█ The defendant introduced testimony indicating that the difference between the market value of yarn corresponding with the sample and the contract price was 10 cents per pound. If the jury believed this, it furnished the measure of damages which defendant suffered by reason of plaintiff's failure to perform his contract, to which should have been added $211, if it found Roscott was authorized to bind plaintiff to pay the expenses incurred by defendant in connection with processing part of the yarn and that $211 was the expense.

For the foregoing reasons, the judgment is reversed.